IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY SHAPLEY <br> [Address Filed Under Seal Pursuant to LCvR 5.1(c)(1)] <br><br> *and* <br><br> JOSEPH ZIEGLER, <br> [Address Filed Under Seal Pursuant to LCvR 5.1(c)(1)] <br><br>           Plaintiffs, <br><br>     v. <br><br> ABBE LOWELL, <br><br>           Defendant. | Civil Action No. |

**COMPLAINT FOR LIBEL AND DEMAND FOR JURY TRIAL**

Plaintiffs Gary Shapley and Joseph Ziegler bring this complaint against Abbe Lowell and allege:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter involves citizens of different states—Plaintiff Gary Shapley ("Shapley") is a citizen of Maryland, Plaintiff Joseph Ziegler ("Ziegler") is a citizen of Georgia, and Defendant Abbe Lowell ("Lowell") is a citizen of Washington, D.C.—and the amount in controversy exceeds $75,000.

2. This Court has personal jurisdiction over Lowell because he resides and works in Washington, D.C., and the defamatory acts occurred in Washington, D.C.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) because Lowell resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

31043034

## THE PARTIES

4. Shapley is a citizen of Maryland and an Internal Revenue Service ("IRS") supervisory special agent who supervised the IRS Criminal Investigation Division's criminal tax investigation of Hunter Biden ("Biden").

5. Ziegler is a citizen of Georgia, a lifelong Democrat, and an IRS special agent who served as the primary case agent on the criminal tax investigation of Biden.

6. Lowell is a citizen of Washington, D.C., and an attorney with a national reputation for handling high-profile legal matters, including legal matters that relate to IRS investigations and enforcement actions. Lowell's defamatory actions were carried out in Washington, D.C., and published to the public, causing harm to Plaintiffs.

## FACTS

**BACKGROUND:**

7. Shapley and Ziegler, both experienced and dedicated special agents of IRS Criminal Investigation, bring this action to vindicate their reputations for the incredible and malicious harm they have suffered at the hands of Abbe Lowell.

8. As whistleblowers, Shapley and Ziegler acted with honor and integrity in exposing conflicts of interest, preferential treatment, and political motivations that they reasonably believed were interfering with the criminal tax investigation of Hunter Biden.

9. In their positions as special agents, Shapley and Ziegler were involved in an investigation into Biden's tax compliance. Though they were simply carrying out their sworn duties, Shapley and Ziegler's efforts to conduct the investigation were met with suppression from various political and institutional forces, leading them to reasonably believe that the Department of Justice—including the U.S. Attorney's Office for the District of Delaware and the Department

31043034

of Justice's Tax Division—and the IRS were providing Biden with politically-motivated preferential treatment. In light of these concerns, the dedicated agents made protected whistleblower disclosures to the appropriate congressional committees, ensuring they adhered to all applicable laws, including 26 U.S.C. § 6103 and Rule 6(e) of the Federal Rules of Criminal Procedure.

10. Their beliefs of "possible misconduct [or] maladministration," 26 U.S.C. § 6103(f)(5), were enough to warrant their use of the whistleblower statute, regardless of whether their beliefs proved true. The very purpose of the whistleblower statute is to authorize people like Shapley and Ziegler making these types of disclosures to the appropriate congressional committees so they can assess evidence of improper handling of a significant criminal tax investigation.

11. The chairmen of those congressional tax committees—including both the Democrat Chair of the Senate Finance Committee and the Republican Chair of the House Ways and Means Committee—helped facilitate Shapley's and Ziegler's lawful disclosures with fully informed advice of counsel.

12. Though Shapley and Ziegler remained professional and cautious in their actions, limiting public discussion to what was legally permissible, Biden's attorney, Lowell, falsely and maliciously accused Shapley and Ziegler of committing crimes—namely, the illegal disclosure of grand jury materials and taxpayer return information—despite the fact that they never publicly discussed return information that was not already public.

13. Just last week, Shapley and Ziegler's concerns were validated. Though the Biden investigation was almost derailed, their efforts resulted in a new level of attention that led to criminal charges, and Biden has now pleaded guilty to all the charges of tax crimes brought against him.

14. It is particularly ironic and damaging that a well-known attorney like Lowell—in his words, "one of the country's foremost white collar defense and trial lawyers" that is "widely viewed as counsel of choice for individuals facing government investigations and potential indictments"—has chosen to falsely accuse these special agents of criminal behavior. Lowell's stature and credibility in the legal community have amplified the harm caused by his defamatory statements.

15. Lowell's malicious and false allegations, including accusations that Shapley and Ziegler "committed felonies" and "violated the law," were published to third parties, including the media, and have severely harmed their professional and personal reputations.

16. Shapley and Zieger now seek the assistance from this Court and a jury from this community in the hope that the public will learn that Lowell's accusations were false, inexcusable, and will not be tolerated.

**LOWELL'S FALSE STATEMENTS**

17. On September 14, 2023, Lowell sent a letter to several congressional committees, which included many of the prior communications Biden's attorneys had sent to government agencies and congressional committees, in which he had falsely accused the Plaintiffs of violating grand jury secrecy rules (Rule 6(e)) and the taxpayer confidentiality statute (26 U.S.C. § 6103).

18. Lest there be any doubt that Lowell had the malicious intent to cause Shapley and Ziegler serious professional and personal reputational harm, he was not content to make his false allegations to investigators and other government officials. In this letter, Lowell also wrote to Congress, "[W]e are also making these materials available to the public." This was an act designed to harm Shapley and Ziegler by republishing the entire package of previous defamatory falsehoods in a larger forum.

31043034

19. That very same day Lowell, acting with clear malice—in retaliation for their protected whistleblowing and for the purpose of causing harm to Shapley and Ziegler's professional and personal reputations—republished all of his legal team's prior defamatory communications to the media. Thus, Lowell made each false statement a new and distinct act of defamation.

20. Specifically, Lowell's September 14, 2024, release to the media republished an April 21, 2023, letter written by Christopher Clark ("Clark"), another Biden attorney, to the Department of Justice Deputy Attorney General's Office. By that time, Lowell understood the April 21, 2023, letter to falsely accuse one or both Plaintiffs of "leak[ing] information to . . . the press, apparently in violation of federal law, regarding the investigation of our client [Biden]" and Lowell knew readers of his September 14 letter would understand the same thing. ("Defamatory Allegation A"). *It is worth noting that years earlier, in December 2020, Biden had already publicly disclosed that he was the subject of a criminal tax investigation.*

21. Lowell was also aware that the House Committee on Ways and Means had been conducting its own investigation and had interviewed Shapley and Ziegler under oath. On or around June 22, 2023, Lowell became aware that the House Committee on Ways and Means voted, pursuant to 28 U.S.C. § 6103(f)(4)(A), to submit to the House of Representatives transcripts of the testimony of Shapley and Ziegler, along with certain supplemental materials, *deliberately—and lawfully—releasing them into the public domain*.

22. After that vote Members of Congress publicly discussed the officially-released, previously confidential information. Shapley and Ziegler did as well, which they had a First Amendment right to do like any American citizen. They did not discuss any confidential tax information about Hunter Biden that had not already been included in the Committee on Ways and

Means' June 22, 2023, release. At no time prior to that release did they identify Biden or disclose any protected taxpayer information to anyone not authorized to receive it.

23. Despite that knowledge, Lowell's September 14, 2024, release to the media republished a June 29, 2023, letter from Clark to the Department of Justice Inspector General, Michael Horowitz. That republication falsely stated that Shapley and Ziegler had disseminated "grand jury and taxpayer information, including through multiple nationally-televised on-camera interviews of [Shapley]," which it called a "clear-cut crime unprotected by any whistleblower statute or other federal law[.]" ("Defamatory Allegation B"). This falsely communicated that Shapley and Ziegler had disclosed protected information that had not already become part of the public domain. Lowell's republication of Clark's letter also expressly accused Shapley and Ziegler of committing a crime: "At this point it is irrefutable that federal agents' criminal acts have inflicted irreversible damage." ("Defamatory Allegation C").

24. The June 29, 2023, Clark letter republished by Lowell also falsely stated: "[I]t is now apparent that IRS Supervisory Special Agent Gary Shapley is the source of at least many of the most damaging and troubling leaks." ("Defamatory Allegation D").

25. That same letter falsely accused Ziegler of wrongful and illegal conduct, stating "yet another federal agent [Joseph Ziegler] . . . illegally leaked information protected by Rule 6(e) and Section 6103[.]" ("Defamatory Allegation E"). It continued of Shapley: "[T]here is no justification or cognizable legal protection for his disclosures of confidential grand jury and tax information . . . , and such disclosures are not protected by any exceptions to either Rule 6(e) or Section 6103. Supervisory Special Agent Shapley's unlawful disclosures . . . are quite simply felonies." ("Defamatory Allegation F").

31043034

26. Lowell's September 14, 2023, republication to the media also included a June 30, 2023, letter Lowell wrote to Chairman Smith of the House Ways and Means Committee, accusing Shapley of having made "unauthorized disclosures." ("Defamatory Allegation G").

27. Lowell's September 14, 2023, republication to the media also included an August 24, 2023, letter to U.S. Attorney David Weiss in which Lowell falsely stated that Shapley and Ziegler "illegally disclosed grand jury and tax return information" ("Defamatory Allegation H"); that their disclosures were "not protected by any exceptions to either Rule 6(e) or Section 6103 ("Defamatory Allegation I"); that those disclosures "are quite simply crimes" ("Defamatory Allegation J"); and that the agents had made "knowing violations of the law that constitute contempt and felony crimes" ("Defamatory Allegation K").

28. Lowell's September 14, 2023, letter itself includes defamatory statements, including that the agents "violate[d] federal laws protecting grand jury and tax information." ("Defamatory Allegation L").

29. Lowell knew each of the Defamatory Allegations A-L were both expressly and implicitly false. He knew that whistleblower disclosures of otherwise confidential tax information to the tax committees in Congress is expressly authorized and permitted by 26 U.S.C. § 6103(f)(5). He knew that it was not a violation of any rule or law for Plaintiffs to discuss information that others lawfully disclosed to the public domain. He knew that Plaintiffs did not release any information that was not already in the public domain. And he knew that people in Plaintiffs' professional and personal community would understand his Defamatory Allegations to mean that Plaintiffs had released non-public information that was protected by rule and statute. Lowell, thus, acted with actual malice in making the Defamatory Allegations.

## **FIRST CLAIM FOR RELIEF**

## **(FOR LIBEL BY SHAPLEY)**

30. Plaintiffs hereby incorporate by reference each and every allegation set forth in Paragraphs 1 through 29.

31. Each of Defamatory Allegation A-D and F-L (the "Shapley Allegations"), taken in context of all the content of Lowell's September 14, 2023, letter and the circumstances under which it was published, directly convey the false and defamatory message that Shapley violated the law.

32. Further, the Shapley Allegations also directly and by implication convey the false and defamatory message that Shapley made disclosures of confidential information that was not already in the public domain.

33. Lowell intended for readers to understand that false message and many readers—if not all of them—understood the false message as Lowell intended.

34. Each of the Shapely Allegations is libelous *per se* because they impute to Shapley the commission of crimes and unfitness and/or disqualification for his profession and occupation.

35. Each of these Shapley Allegations is a false statement of fact.

36. At the time Lowell made the Shapley Allegations, he knew they were false or acted with reckless disregard for their truth.

37. Lowell's publication of the Shapley Allegations was not subject to any privilege.

38. As a direct and proximate result of the publications of the Shapley Allegations, Shapley has suffered injury to his reputation, shame, mortification, and mental anguish to his general damage in an amount to be proven at trial, but not less than $10,000,000.

39. Lowell's conduct as alleged herein was willful, wanton, and malicious and was done with conscious disregard for Shapley's rights. Accordingly, an award of punitive and exemplary damages is appropriate.

## SECOND CLAIM FOR RELIEF

### (FOR LIBEL BY ZIEGLER)

40. Plaintiffs hereby incorporate by reference each and every allegation set forth in Paragraphs 1 through 29.

41. Each of Defamatory Allegation A-C, E, H-L (the "Ziegler Allegations") taken in context of all the content of Lowell's September 14, 2023, letter and the circumstances under which it was published, directly convey the false and defamatory message that Ziegler violated the law.

42. Further, those Ziegler Allegations also directly and by implication convey the false and defamatory message that Ziegler made disclosures of confidential information that was not already in the public domain.

43. Lowell intended for readers to understand that false message and many readers—if not all of them—understood the false message as Lowell intended.

44. Each of these Ziegler Allegations is libelous *per se* because they impute to Ziegler the commission of crimes and unfitness and/or disqualification for his profession and occupation.

45. Each of these Ziegler Allegations is a false statement of fact.

46. At the time Lowell made the Ziegler Allegations, he knew they were false or acted with reckless disregard for their truth.

47. Lowell's publication of the Shapley Allegations was not subject to any privilege.

31043034

48.  As a direct and proximate result of the publications of the Ziegler Allegations, Ziegler has suffered injury to his reputation, shame, mortification, and mental anguish to his general damage in an amount to be proven at trial, but not less than $10,000,000.

49.  Lowell's conduct as alleged herein was willful, wanton, and malicious and was done with conscious disregard for Ziegler's rights.  Accordingly, an award of punitive and exemplary damages is appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment against Defendant as follows:

1.  Compensatory damages for each Plaintiff in an amount to be proven at the time of trial, but not less than $10,000,000;

2.  Punitive damages for each Plaintiff in an amount to be proven at trial;

3.  Costs of suit incurred by Plaintiffs in this matter; and

4.  Such further and other relief as the Court might deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims, as to all issues so triable.

Dated: September 13, 2024

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By: */s/ Mitchell J. Langberg*
Mitchell J. Langberg, Bar No. NV008
mlangberg@bhfs.com

100 North City Parkway
Suite 1600
Las Vegas, NV  89106
Telephone:	702.382.2101
Facsimile:	702.382.8135

EMPOWER OVERSIGHT
WHISTLEBLOWERS & RESEARCH

Michael S. Zummer, Bar No. LA0013
mzummer@empowr.us
5500 Prytania St. #524
New Orleans, LA 70115
Telephone:	504.717.5913

Attorneys for Plaintiffs

31043034