# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY SHAPLEY and | |
| JOSEPH ZIEGLER, | |
| Plaintiffs, | Civil Action No. 1:24-cv-02646-RJL |
| v. | |
| ABBE LOWELL, | |
| Defendant. | |

**PLAINTIFFS GARY SHAPLEY AND JOSEPH ZIEGLER'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT ABBE LOWELL'S MOTION TO DISMISS**

32128974

# TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………...1

FACTUAL BACKGROUND…………………………………………………………….....3

LEGAL STANDARD………………………………………………………………….....6

ARGUMENT……………………………………………………………………….....…7

   A.  Lowell Made Demonstrably False Accusations Against the Whistleblowers. ................... 7

    1.  Lowell Entirely Ignores the Whistleblowers' Second Basis for Lowell's Defamation
Liability............................................................................................................................ 7

    2.  Lowell's Accusations of Criminal Conduct Are Not Pure Opinions; They Are Express
Statements of Facts or, at Minimum, Mixed Opinions Based on Undisclosed Facts. .......... 10

       a.  Lowell's accusations are express statements of fact. …………………….…………12

       b.  If the Court believes Lowell's accusations of illegal conduct is not sufficiently
factual, those accusations are at least actionable mixed opinions based on undisclosed
facts. ……………………………………………………………………………….....…13

           (1)  Lowell implied undisclosed defamatory facts. ……………………………14
           (2)  Lowell, as a highly regarded criminal-defense attorney, made the
accusations when calling for an investigation into the Whistleblowers………....15

   B.  The Whistleblowers Did Not Violate Rule 6(e) or Section 6103. .................................... 20

    1.  D.C. Courts recognize a public-domain exception to Rule 6(e). ................................. 21

    2.  The Courts in this District typically recognize a public-domain exception to Section
6103....................................................................................................................................... 22

    3.  The Whistleblowers did not violate the law in this District. ........................................... 25

   C.  Lowell Acted With Actual Malice. .................................................................................... 28

    1.  Actual Malice May Be Shown By Cumulative, Circumstantial Inferences From Facts
Alleged. ................................................................................................................................. 28

    2.  The Cumulation Of Reasonable Inferences From Lowell's Statements In His Published
Letters Support The Plausible Inference of Actual Malice With Respect To Whether The
Whistleblowers Disclosed Information Not Already in the Public Domain......................... 29

    3.  The Cumulation Of Reasonable Inferences From the Facts Set Out In the Complaint
And The Letters On Which The Whistleblowers' Claims Are Based Plausibly Allege Actual
Malice With Respect To The Allegation That The Whistleblowers Engaged In Illegal
Conduct. ................................................................................................................................ 31

       a.  Lowell's Legal Experience and Expertise. …………………………………………32

       b.  Omission of Material Information and Changing Stances. ………………………33

       c.  Relation of the Parties and Circumstances Attending the Allegations. ………….36

       d.  Preconceived Narrative. ……………………………………………………………38

32128974

e.   Ill Will and Animus. ...……………………………………………………………39

D.   Lowell's Publication Was Not Privileged Because The Whistleblowers Do Not Sue For Lowell's Publication To Congress—They Sue For Lowell's Admitted Publication To The Media. ...................................................................................................................... 41

E.   In the Event the Court Finds That Their Claims Have not Been Sufficiently Pleaded, the Whistleblowers Should Be Granted Leave to Amend. ............................................................. 43

CONCLUSION………………………………………………………………………………..45

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbas v. Foreign Pol'y Grp., LLC*,
  783 F.3d 1328 (D.C. Cir. 2015) ................................................................................23

*Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*,
  525 F.3d 8 (D.C. Cir. 2008) .....................................................................................29

*Armenian Assembly of Am., Inc. v. Cafesjian*,
  597 F. Supp. 2d 128 (D.D.C. 2009) ..........................................................................42

*Bancroft Glob. Development v. United States*,
  330 F. Supp. 3d 82 (D.D.C. 2018) ............................................................................23

*Bass v. Bair*,
  514 F. Supp. 2d 96 (D.D.C. 2007) ............................................................................33

*Bauman v. Butowsky*,
  377 F. Supp. 3d 1 (D.D.C. 2019) .............................................................8, 10, 14, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................29

*Biden v. Internal Revenue Serv.*,
  CV 23-2711 (RC), 2024 WL 4332072 (D.D.C. Sept. 27, 2024) .........................6, 27

*Bose Corp. v. Consumers Union of U.S.*,
  692 F.2d 189 (1st Cir. 1982), *aff'd*, 104 S. Ct. 1949 (1984)............................28, 29

*Cianci v. New Times Publ'g Co.*,
  639 F.2d 54 (2d Cir. 1980) (quoted with approval by *Milkovich v. Lorain J.
  Co.*, 497 U.S. 1 (1990))...........................................................................................10

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ...............................................................................17, 18

*Dial A Car, Inc. v. Transp., Inc.*,
  884 F. Supp. 584 (D.D.C. 1995), *aff'd*, 82 F.3d 484 (D.C. Cir. 1996)..............18, 19

*Donald J. Trump for President, Inc. v. WP Co. LLC*,
  2023 WL 1765193 (D.D.C. Feb. 3, 2023) .................................................................11

*Eastwood v. Nat'l Enquirer, Inc.*,
  123 F.3d 1249 (9th Cir. 1997) ..................................................................................28

iv

*Florio v. Gallaudet Univ.*,
   619 F. Supp. 3d 36 (D.D.C. 2022), *aff'd but criticized for other reasons*, 119
   F.4th 67 (D.C. Cir. 2024) ........................................................................... *passim*

*Glass v. United States*,
   480 F. Supp. 2d 162 (D.D.C. 2007) ...................................................................22

*In re Grand Jury Subpoena, Judith Miller*,
   493 F.3d 152 (D.C. Cir. 2007) (per curiam) ............................................21, 22, 34

*Harris v. City of Seattle*,
   152 F. App'x 565 (9th Cir. 2005) ......................................................................38

*Harte-Hanks Communications, Inc. v. Connaughton*,
   491 U.S. 657 (1989) ..........................................................................................28

*Hellmuth v. Efficiency Energy, L.L.C.*,
   2016 WL 642352 (S.D. Tex. Feb. 18, 2016) ...........................................10, 18, 19

*Ho v. Garland*,
   106 F.4th 47 (D.C. Cir. 2024) .............................................................................6

*Intelsat USA Sales Corp. v. Juch-Tech, Inc.*,
   935 F. Supp. 2d 101 (D.D.C. 2013) ...................................................................42

*Johnson v. Sawyer*,
   120 F.3d 1307 (5th Cir. 1997) ...........................................................................24

*Kambala WA Kambala v. Checchi & Co. Consulting*,
   280 F. Supp. 3d 131 (D.D.C. 2017) ..............................................................41, 42

*Koerner v. United States*,
   471 F. Supp. 2d 125 (D.D.C. 2007) ...................................................................23

*Lampert v. United States*,
   854 F.2d 335 (9th Cir. 1988) .............................................................................23

*Levesque v. Doocy*,
   560 F.3d 82 (1st Cir. 2009) ...............................................................................28

*Lowy v. I.R.S.*,
   C 10-00767 SI, 2011 WL 1211479 (N.D. Cal. Mar. 30, 2011), *as modified*
   (Nov. 28, 2011) ................................................................................................32

*Mallas v. United States*,
   993 F.2d 1111 (4th Cir. 1993) ......................................................................24, 25

*Mastro v. Potomac Elec. Power Co.*,
  447 F.3d 843 (D.C. Cir. 2006) ...........................................................................23

*Meyer Grp., Ltd. v. Rayborn*,
  695 F. Supp. 3d 39 (D.D.C. 2023) ......................................................................9

*Milkovich v. Lorain Journal*,
  497 U.S. 1 (1990)................................................................................. *passim*

*In re Motions of Dow Jones & Co.*,
  142 F.3d 496 (D.C. Cir.1998) ............................................................................35

*Nicosia v. De Rooy*,
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) ...............................................................18

*In re North*,
  16 F.3d 1234 (D.C. Cir. 1994) ...........................................................................22

*Noske v. United States*,
  1993 WL 264531 (8th Cir. July 15, 1993)..........................................................24

*Orr v. Argus-Press Co.*,
  586 F.2d 1108 (6th Cir. 1978) ............................................................................32

*Palin v. New York Times Co.*,
  940 F.3d 804 (2d Cir. 2019)................................................................................29

*Perez v. Weaver*,
  2022 WL 22863218 (E.D. Ky. Dec. 14, 2022), *report and recommendation
  adopted*, 2023 WL 11897158 (E.D. Ky. Apr. 21, 2023) .....................................18

*Pollinger v. United States*,
  539 F. Supp. 2d 242 (D.D.C. 2008) ....................................................................23

*Rice v. United States*,
  166 F.3d 1088 (10th Cir. 1999) ..........................................................................24

*Rodriguez v. Panayiotou*,
  314 F.3d 979 (9th Cir. 2002) .........................................................................18, 19

*Rollins v. Wackenhut Servs., Inc.*,
  703 F.3d 122 (D.C. Cir. 2012) ....................................................................6, 8, 27

*Rowley v. United States*,
  76 F.3d 796 (6th Cir. 1996) ................................................................................23

*Ruifang Hu v. K4 Sols., Inc.*,
  2020 WL 1189297 (D.D.C. Mar. 12, 2020)........................................................41

vi

*Sandpiper Residents Ass'n v. United States Dep't of Hous. & Urb. Dev.*,
 106 F.4th 1134 (D.C. Cir. 2024) ................................................................6, 7

*Schiavone Constr. Co. v. Time, Inc.*,
 847 F.2d 1069 (3d Cir. 1988) ........................................................................33

*In re Sealed Case No. 99-3091*,
 192 F.3d 995 (D.C. Cir. 1999) .......................................................................22

*Shive-Ayala v. Pacelle*,
 2022 WL 782412 (D.D.C. Mar. 15, 2022) ......................................................27

*Tavoulareas v. Piro*,
 817 F.2d 762 (D.C. Cir. 1987) .................................................................28, 39

*Tax Analysts v. I.R.S.*,
 97 F. Supp. 2d 13 (D.D.C. 2000), *rev'd in part on other grounds*, 294 F.3d 71
 (D.C. Cir. 2002) .............................................................................................23

*Thomas v. United States*,
 890 F.2d 18 (7th Cir. 1989) ....................................................................24, 26

*Tomblin v. WCHS-TV8*,
 434 F. App'x 205 (4th Cir. 2011) ..................................................................33

*Toranto v. Jaffurs*,
 297 F. Supp. 3d 1073 (S.D. Cal. 2018) ...........................................................43

*US Dominion, Inc. v. Powell*,
 554 F. Supp. 3d 42 (D.D.C. 2021) .......................................................... *passim*

*Wade v. Wood*,
 2024 WL 1075482 (N.D. Ga. Mar. 12, 2024) .................................................16

*Washington Post Co. v. Keogh*,
 365 F.2d 965 (D.C. Cir. 1966) .......................................................................44

*Weyrich v. New Republic, Inc.*,
 235 F.3d 617 (D.C. Cir. 2001) .......................................................................11

*White v. Fraternal Ord. of Police*,
 909 F.2d 512 (D.C. Cir. 1990) .......................................................................11

*Williams v. Burns*,
 540 F. Supp. 1243 (D. Colo. 1982) ................................................................15

32128974

**State Cases**

*In re Day*,
   717 A.2d 883 (D.C. 1998) ............................................................................... 33

*DR Partners v. Floyd*,
   228 S.W.3d 493 (Tex. App. 2007) ................................................................... 36

*Huckabee v. Time Warner Entm't Co. L.P.*,
   19 S.W.3d 413 (Tex. 2000) ............................................................................. 34

*Kevorkian v. Am. Med. Ass'n.*,
   237 Mich. App. 1, 602 N.W.2d 233 (1999) ..................................................... 16

*Newmyer v. Sidwell Friends Sch.*,
   128 A.3d 1023 (D.C. 2015) ............................................................................. 41

*Pitt Chem. & Sanitary v. Generational Equity*,
   2013 WL 11247583 (Pa. Super Dec. 24, 2013) .......................................... 17, 18

*Punturo v. Kern*,
   2018 WL 5276142 (Mich. Ct. App. Oct. 16, 2018) ...................................... 15, 16

*Turner v. KTRK Television, Inc.*,
   38 S.W.3d 103 (Tex. 2000) ............................................................................. 32

*United States v. Biden*,
   1:23-mj-00274-MN (D. Del., order filed Aug. 17, 2023) ................................ 44

**Federal Statutes**

26 U.S.C. § 6103 ........................................................................................... *passim*

Federal Rule of Criminal Procedure 6(e) ...................................................... *passim*

**Other Authorities**

APPARENT, Black's Law Dictionary (12th ed. 2024) ........................................ 12

*Consideration of Documents Protected Under Internal Revenue Code Section
   6103*, H. Comm. on Ways & Means, 108th Cong., (June 22, 2023) ................. 44

R. Smolla, *1 Law of Defamation* § 6.28 ...................................................... 10, 11

R. Smolla, *1 Law of Defamation* § 6.30 ............................................................ 11

Restatement (Second) of Torts § 566 (updated Oct. 2024) ................................ 11

Restatement (Second) of Torts § 571, cmt. e (1977) ..................................... 14, 21

U.S. House Comm. on Ways & Means, *Smith: Testimony of IRS Employees*
*Reveals Biden IRS, DOJ Interfered in Tax Investigation of Hunter Biden,*
*Revealing Preferential Treatment for Wealthy and Politically Connected,*
https://tinyurl.com/preferential-treatment (last visited Dec. 10, 2024)....................................25

Wright & Miller, *Fed. Prac. & Proc.* § 107 (5th ed.)...................................................................21

ix

**INTRODUCTION**

This case reveals the hypocrisy of Defendant Abbe Lowell, a prominent attorney who was willing to destroy the reputations of two career IRS agents and whistleblowers in a desperate attempt to protect his client. Plaintiffs Gary Shapley and Joseph Ziegler, seasoned IRS Criminal Investigation Division agents, followed the law when they disclosed to Congress evidence of preferential treatment in the Hunter Biden investigation. They adhered to whistleblower provisions and only made public comment about information that was already lawfully in the public domain. Nonetheless, Lowell falsely accused them of committing "clear-cut crimes" and leaking nonpublic information—assertions designed to discredit the Plaintiffs and shield Biden from scrutiny. Lowell made these false allegations to Congress while expressly admitting that he was also "making [them] available to the public." For Lowell, this was true to form. Biden's legal team had warned other government prosecutors and investigators that trying to hold Biden responsible for his criminal conduct would be "career suicide." In making his false allegations, Lowell sacrificed the reputations of two public servants to obscure the misconduct that ultimately led to Biden pleading guilty to multiple tax felonies. ***Plaintiffs*** seek no pardon because they committed no crimes. They merely seek to restore their reputations after Lowell so blithely tarnished them.

Lowell's defenses collapse under scrutiny. First, Lowell ignores half of the defamatory message underlying the Complaint: that his accusations of disclosing nonpublic information defamed Plaintiffs independent of whether his additional allegation that Plaintiffs committed crimes was a mere matter of opinion. This separate defamatory accusation directly impugns the Plaintiffs' fitness for their profession as IRS investigators and is actionable on its own. Lowell's refusal to address this aspect of the defamation claims underscores the weakness of his position.

Second, Lowell's two primary defenses—opinion and lack of malice—are fundamentally

1

flawed. His accusations were not opinions but absolute and categorical statements of fact. He declared that the Plaintiffs' actions were "clear-cut crimes," that their disclosures had "no justification or cognizable legal protection," and that they provided information "not already in the public domain." These unqualified assertions betray any claim to opinion, particularly given Lowell's expertise as a white collar defense attorney.

Lowell's claim of lack of malice fares no better. His own letter to Congress, in which he accused the House of using its investigation "to dump wholesale protected tax information about Mr. Biden on the public," demonstrates that Lowell knew *Congress*, not the Plaintiffs, had already made the information at issue public. Despite this knowledge, he accused Plaintiffs of discussing nonpublic information—an allegation that was knowingly false or made with reckless disregard for the truth. Worse still, he amplified these accusations to the media, not to defend his client but to retaliate against the Plaintiffs, imposing the maximum reputational harm for exposing DOJ misconduct that benefited his client, the President's son.

At its core, this case is about accountability. Lowell's absolute and defamatory accusations cannot be excused as mere opinions, nor can his reckless disregard for the truth be obscured by his attempt to rewrite history. At the pleading stage, where Plaintiffs' well-pleaded allegations must be taken as true, Lowell's motion to dismiss fails. His willingness to sacrifice the reputations of two law-abiding whistleblowers to protect a client who ultimately pled guilty is as indefensible as it is destructive. Plaintiffs seek to restore their reputations and ensure that Lowell is held to account for weaponizing false statements to retaliate against them.

Most importantly, Supervisory Special Agent Gary Shapley and Special Agent Joseph Ziegler bring this action for the benefit of those government servants who come after them. Whistleblowers are critical to the proper functioning of government, exposing misconduct that

would otherwise remain hidden. Speaking up against powerful forces is never easy, and it often requires extraordinary resolve at great personal and professional risk. Future whistleblowers will face the same difficult choices, knowing their careers and reputations may be in jeopardy. If the powerful can defame whistleblowers with impunity, who will feel safe coming forward? Allowing such egregiously false attacks to go unchecked will send a chilling message to those who might one day be called to serve the public interest. This lawsuit seeks to ensure that whistleblowers can fulfill their role without fear of unjust retribution.

## FACTUAL BACKGROUND

Plaintiffs Gary Shapley ("**Shapley**") and Joseph Ziegler ("**Ziegler**") (collectively, "**Whistleblowers**") are career IRS Criminal Investigation Division investigators. (ECF 1, ¶¶ 4-5, 7). They were each assigned to the IRS's criminal tax investigation of Hunter Biden ("**Biden**"), Shapley as the supervisory special agent and Ziegler as the primary case agent. (ECF 1, ¶¶ 4-5).

Over the course of their investigation and the carrying out of their sworn duties, the Whistleblowers' efforts to properly investigate Biden—just as they would investigate any other member of the American public—were suppressed. (ECF 1, ¶ 9). The resistance the Whistleblowers experienced caused them to reasonably conclude that the Department of Justice and the IRS were providing Biden with preferential treatment, simply because he is the President's son. (ECF 1, ¶ 9).

Believing that their sworn duties as federal agents required them to do more, the Whistleblowers made protected whistleblower disclosures to appropriate congressional committees, adhering to the requirements of 26 U.S.C. § 6103 ("**Section 6103**") and Federal Rule of Criminal Procedure 6(e) ("**Rule 6(e)**"). (ECF 1, ¶ 9). The disclosures the Whistleblowers made during their congressional testimony were of the sort expressly authorized by statute and legally

permissible under the circumstances. (ECF 1, ¶ 12).

The fact of Biden's legal troubles, including the IRS's investigation into his tax compliance, was also far from a "state secret." As long ago as December 2020, Biden himself publicly disclosed that he was under investigation by the IRS. (ECF 1, ¶ 20). Biden has had multiple attorneys represent him with respect to those legal problems, including Christopher Clark ("**Clark**") and Abbe Lowell ("**Lowell**"). (ECF 1, ¶¶ 12, 20).

Lowell is a nationally-recognized white collar criminal defense lawyer, living and working in Washington, D.C. (ECF 1, ¶¶ 2, 6). Lowell holds himself out as "one of the country's foremost white collar defense and trial lawyers" who is "widely viewed as counsel of choice for individuals facing government investigations and potential indictments," and his experience includes representing taxpayers in disputes with the IRS and with respect to IRS investigations. (ECF 1, ¶ 6, 14). His public statements on behalf of clients he represents in such matters thus carry with them the imprimatur of authority and legitimacy.

Unsurprisingly, Lowell has made numerous public statements about the IRS's Biden investigation. Certain of those are the subject of this lawsuit. After the Whistleblowers gave their testimony before the House Ways and Means Committee in the summer of 2023, the Committee lawfully released to the public the Whistleblowers' testimony and documents related to the Biden investigation. (ECF 1, ¶ 21). Members of Congress and the Whistleblowers then publicly discussed that testimony and those supplemental materials, since they had been lawfully and officially released into the public domain. (ECF 1, ¶ 22).

When that happened, Lowell decided he would use that testimony, contorting it into something unlawful, as part of the preconceived narrative Biden's lawyers had formulated as part of his intended criminal defense. On September 14, 2023, Lowell wrote to the Chairmen of several

House committees ("**September 14 Letter**"). (ECF 11-43). With the letter, he attached previous letters from his legal team regarding the Whistleblowers, and the Biden investigation more broadly, that were addressed to Congress and Department of Justice officials. (*See id.*; *see also* ECF 11-41).[1] Lowell did not just publish the letter and its accompanying materials to Congress. Though Lowell's allegations about the Whistleblowers were false, unfair, and harmful, sending these materials only to Congress was not the end of the matter.

Not satisfied with smearing the good names of the Whistleblowers to Congress, Lowell also wrote that he was "making these materials available to the public," and that same day republished this letter and its attachments to the media. (ECF 11-43; ECF 1, ¶¶ 15, 19, 20, 23, 26, 27 (alleging publication to the media)).

The package of letters Lowell published to the media contains multiple defamatory statements about the Whistleblowers ("**Defamatory Allegations**"). (ECF 1, ¶¶ 20-28). All of those Defamatory Allegations defamed the Whistleblowers in two separately actionable ways. First, they all accuse the Whistleblowers of having committed a serious illegal act—violating Section 6103 and Rule 6(e) through their testimony and later public statements on the same subject matter as their testimony. (ECF 1, ¶¶ 31, 41). Lowell's September 14 Letter called for criminal consequences for the Whistleblowers. (ECF 11-43). Second, they also accuse the Whistleblowers of disclosing confidential information that was not already in the public domain, which impugned their reputations in their occupations as IRS criminal investigators regardless of whether such disclosures would amount to a criminal violation. (ECF 1, ¶¶ 32, 42).

---

[1] The September 14 Letter included an August 14, 2023, letter written by Lowell to Special Counsel David Weiss. That August 14 letter itself included a February 8, 2023, letter, two April 21, 2023, letters, and a June 29, 2023, letter as exhibits, all of which were written by Clark to the Department of Justice, its Office of Inspector General, and/or United States Attorneys' Offices, about the Whistleblowers.

Biden sued the IRS civilly for the Whistleblowers' purported breach of Section 6103. Eager to defend themselves, the Whistleblowers moved to intervene in that case. In an effort to silence them and prevent them from telling their whole story in that forum, Biden vehemently opposed their involvement. Their motion was denied. *See Biden v. Internal Revenue Serv.*, CV 23-2711 (RC), 2024 WL 4332072, at \*10-\*14 (D.D.C. Sept. 27, 2024).

In light of the roadblocks to the truth emerging in that matter, the Whistleblowers brought this action to set the record straight, in the hope that the public will learn that Lowell's accusations were false, inexcusable, and will not be tolerated, and to obtain compensation for the severe harm to their reputations resulting from the Defamatory Allegations. (ECF 1, ¶¶ 15-16).

## LEGAL STANDARD

To rule on a FRCP 12(b)(6) motion, a court must "'accept the operative complaint's well-pleaded factual allegations as true and draw all reasonable inferences in' [the plaintiff's favor]." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (quoting *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020)). A complaint "survive[s] a motion to dismiss" when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

"The facts alleged must 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "So long as the pleadings suggest a plausible scenario to show that the pleader is entitled to relief, a court may not dismiss." *Sandpiper Residents Ass'n v. United States Dep't of Hous. & Urb. Dev.*, 106 F.4th 1134, 1143 (D.C. Cir. 2024) (internal citations and punctuation omitted).

**ARGUMENT**

**A.    Lowell Made Demonstrably False Accusations Against the Whistleblowers.**

This case is not about a debatable matter of pure legal opinion. Lowell—self-proclaimed as "one of the country's foremost white collar defense and trial lawyers"—publicly called for the Whistleblowers to be criminally prosecuted for "***clear-cut***" violations of law. (ECF 1, ¶¶ 14, 23 (emphasis added); *see also* ECF 11-38 (June 29, 2023, letter, republished with September 14 Letter) (emphasis added); ECF 11-43). "[S]imply felonies," he declared of the Whistleblowers' actions. *Id.* But now, as the Defendant in this lawsuit, Lowell backtracks, arguing that the same laws are not clear enough to render his Defamatory Allegations "factual" for the purpose of defamation liability. (*See* ECF 11-1 at 24-28).

Besides the irony of his argument, Lowell errs in at least two respects. First, Lowell conflates all the Whistleblowers' allegations into a single theory of defamation when the Whistleblowers have instead alleged two distinct defamatory messages. Second, Lowell confuses the nuances between statements of fact, pure opinion, and mixed opinions.

1.    <u>Lowell Entirely Ignores the Whistleblowers' Second Basis for Lowell's
Defamation Liability.</u>

Lowell mischaracterizes the Whistleblowers' Complaint as alleging "a singular false and defamatory message: that "[the Whistleblowers] violated the law." (ECF 11-1 at 28 (internal quotations omitted); *id.* at 25, n.3). This is untrue. The Whistleblowers allege two related, but distinct, defamatory messages that give rise to his liability: (1) Lowell falsely accused the Whistleblowers of ***violating the law*** because they disseminated nonpublic tax return and grand jury information, and (2) Lowell falsely accused the Whistleblowers of ***disseminating nonpublic tax return and grand jury information***, which carried an independent defamatory meaning (regardless of whether such conduct was legal) because, in any event, it would render them unfit

as IRS special agents, or for any related job in government or the private sector.[2] (ECF 1, ¶¶ 34 ("Each of the [accusations against Shapley] is libelous per se because they impute to Shapley the commission of crimes and unfitness and/or disqualification for his profession and occupation."); *id.* ¶ 44 (the same allegation as to Ziegler)).

The accusations composing the second defamatory message are actionable even had Lowell never accused the Whistleblowers of violating the law. "It is well established, if deceivingly simplistic, that an actionable statement [for defamation] must be 'false as well as defamatory.'" *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 10 (D.D.C. 2019) (quoting *Rosen v. Am. Israel Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1255–56 (D.C. 2012)). So the statement "must be both 'verifiable' as false 'and reasonably capable of defamatory meaning.'" *Id.* (quoting *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 620 (D.C. Cir. 2001)).

Whether the Whistleblowers disseminated nonpublic tax or grand jury information is verifiably false. The Whistleblowers either released information that was not already part of the public domain as Lowell, accuses, or they did not. They allege—and the Court must accept as true at this stage—that they did not.[3] *Rollins*, 703 F.3d at 129–30 (a court must accept as true the

---

[2] Responding to Lowell's second footnote, Shapley alleges that "Allegation D" is defamatory based on the second theory, i.e., that Shapley "leaked" nonpublic tax and grand jury information, rendering him unfit as an IRS special agent. (*See* ECF 1, ¶¶ 29, 34). He does not allege that "Allegation D" is defamatory based on Lowell identifying him as the "source." However, Shapley disputes Clark's characterization that he was the "source."

[3] To the extent the Court takes notice of Lowell's 949 pages of exhibits, the exhibits cannot resolve this disputed fact. As Lowell recognizes in his Motion, (ECF 11-1 at 6 n. 1), the exhibits may be noticed "'not for their truth, but merely for the fact they were published' or took place," *id.* (quoting *Shive-Ayala v. Pacelle*, 2022 WL 782412, at *2 n.1 (D.D.C. Mar. 15, 2022) (citation omitted)). Further, the Whistleblowers allege that Biden was the first individual to disclose to the public that he was under investigation by the IRS. (ECF 1, ¶ 20). He did so in 2020. *Id.* Thus, if the media reported that based on Lytle's ambiguous interview prior to the Committee releasing the congressional transcripts, it was already public knowledge. And in any event, the Whistleblowers have no control over the media publishing its hypotheses or those of its other sources.

allegations in a complaint when ruling on a Rule 12(b)(6) motion); *see also* ECF 1, ¶ 23 (Lowell "falsely communicated that [the Whistleblowers] had disclosed protected information that had not already become part of the public domain."); *id.* ¶¶ 21-22 (detailing the release of the at-issue information). And beyond Plaintiffs' allegations, even Lowell's own exhibits confirm that the Whistleblowers did not discuss Biden's tax information beyond what was previously made public. In his September 14, 2023, letter to several Committee chairmen, Lowell complains that the Committee "pretended[ed] to provide a forum for real whistleblowers when [its] goals were to misuse that process to ***dump wholesale*** protected tax information about Mr. Biden on the public." (ECF 11-43 at 3 (emphasis added)). He thus acknowledged that the at-issue information was lawfully part of the public domain, rendering his allegations that the Whistleblowers disseminated ***nonpublic*** tax information false, and knowingly so.

The Defamatory Allegations composing the Whistleblowers' second theory are also reasonably capable of a defamatory meaning. Indeed, the accusations are defamatory per se. "A statement is 'defamatory per se' if it is 'so likely to cause degrading injury to the subject's reputation that proof of harm is not required to recover compensation.'" *Meyer Grp., Ltd. v. Rayborn*, 695 F. Supp. 3d 39, 67 (D.D.C. 2023) (quoting *Franklin v. Pepco Holdings*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012). A statement is actionable as defamation per se if it "make[s] a plaintiff unfit for their chosen profession" or "may reasonably be capable of calling a plaintiff's professionalism into question[.]" *Id.* (internal quotations and punctuation omitted).

If a layperson were to disclose another's private tax information without authorization or justification, the act would be condemned as abhorrent. Here, the accusations are even more serious. The Whistleblowers serve as IRS Criminal Investigation special agents. (ECF 1, ¶¶ 7, 9). In that role, the Whistleblowers have certain sworn duties, *id.* ¶ 9, and they are government officials

entrusted with some of the most confidential information of members of the public, *see id*. By accusing the Whistleblowers of "leaking" nonpublic tax information, Lowell has not only called into question the Whistleblowers' professionalism as IRS Criminal Investigation special agents, he has condemned them as unfit for the profession. The accusations are thus defamatory per se.

Lowell completely fails to address the second defamatory message alleged by the Whistleblowers. Unlike the Whistleblowers' first theory, their second theory does not hinge on the legality of the Whistleblowers' actions. Lowell's Motion must be denied as to the second theory.

2.    Lowell's Accusations of Criminal Conduct Are Not Pure Opinions; They Are Express Statements of Facts or, at Minimum, Mixed Opinions Based on Undisclosed Facts.

The Whistleblower's second theory of defamation is not the only issue that Lowell ignores in his Motion. When arguing that his accusations are nonactionable legal opinions, Lowell ignores the distinction between an expression of a fact, a pure opinion, and a mixed opinion. "It would be destructive of the law of libel if a writer could escape liability for [defamatory] accusations of crime simply by using, ***explicitly or implicitly***, the words 'I think.'" *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 64 (2d Cir. 1980) (quoted with approval by *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19 (1990)) (emphasis added). For this reason, it has long been held that "a defamation defendant cannot avoid liability merely by couching statements as 'opinions.'" *Hellmuth v. Efficiency Energy, L.L.C.*, 2016 WL 642352, at *3 (S.D. Tex. Feb. 18, 2016); *see also Milkovich*, 497 U.S. at 19.

But "[t]he line between fact and opinion is not always bright, and statements tend not to fit neatly into categories of verifiable and unverifiable but rather exist on a spectrum with respect to the degree to which they can be verified." *Bauman*, 377 F. Supp. 3d at 11 (internal citations and punctuation omitted). Indeed, "[s]tatements couched as opinion may imply an assertion of objective fact." R. Smolla, *1 Law of Defamation* § 6.28; *see also Milkovich*, 497 U.S. at 19

10

32128974

("Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, "Jones is a liar."). Such statements are not pure opinions; they are termed "mixed opinions." Smolla, *supra*, § 6:28; Restatement (Second) of Torts § 566 (updated Oct. 2024); *Donald J. Trump for President, Inc. v. WP Co. LLC*, 2023 WL 1765193, at *6 (D.D.C. Feb. 3, 2023) ("a mixed opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it.") (quotations and citations omitted). Mixed opinions "do not disclose the facts upon which they are based, but rather imply the existence of undisclosed defamatory facts that justify the opinion expressed." *Id.*; *see also* Smolla, *supra*, § 6.30; Restatement (Second) of Torts § 566.

The determination of whether an accusation is actionable turns on whether a reasonable factfinder could conclude that the alleged defamatory statement is expressly or impliedly an assertion of a verifiably false fact about the plaintiff. *Milkovich*, 497 U.S. at 21; *see also US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 58 (D.D.C. 2021). Assertions based on "articulations of objectively verifiable events," "whether express or implied," are actionable as defamation. *White v. Fraternal Ord. of Police*, 909 F.2d 512, 523 (D.C. Cir. 1990). Further, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich*, 497 U.S. at 18–19. "In deciding whether a reasonable factfinder could conclude that a statement expressed or implied a verifiably false fact about [the plaintiff], the court must consider the statement in context." *Weyrich*, 235 F.3d at 624.

Lowell's accusations against the Whistleblowers were express statements of fact or, at minimum, mixed opinions based on undisclosed facts.

11

a.    **Lowell's accusations are express statements of fact.**

A reasonable juror could conclude that Lowell's accusations against the Whistleblowers expressed assertions of verifiable facts. Lowell did not hedge his accusations that the Whistleblowers committed felonies. He instead spoke with finality, as shown from the content of the Defamatory Allegations themselves:

- The Whistleblowers had disseminated "grand jury and taxpayer information, including through multiple nationally-televised on-camera interviews of [Shapley]," which amounted to a "***clear-cut crime unprotected by any whistleblower statute*** or other federal law[.]" (ECF 1, ¶ 23 (emphasis added)).

- "At this point it is irrefutable that federal agents' ***criminal acts*** have inflicted irreversible damage." (ECF 1, ¶ 23 (emphasis added)).

- "[I]t is now apparent that IRS Supervisory Special Agent Gary Shapley is the source of at least many of the most damaging and troubling leaks."[4] (ECF 1, ¶ 24).

- ***"[T]here is no justification or <u>cognizable</u> legal protection*** for [Shapley's] disclosures of confidential grand jury and tax information . . . , and such disclosures are not protected by any exceptions to either Rule 6(e) or Section 6103. Supervisory Special Agent Shapley's unlawful disclosures . . . are ***quite simply felonies.***" (ECF 1, ¶ 25 (emphases added)).

- The Whistleblowers "illegally disclosed grand jury and tax return information" and that their disclosures were "not protected by any exceptions to either Rule 6(e) or Section 6103," but instead, the disclosures "***are quite simply crimes.***" (ECF 1, ¶ 27 (emphasis added)).

- The Whistleblowers had made "knowing violations of the law that constitute contempt and felony crimes." (ECF 1, ¶ 27).

Lowell thus expressed assertions of verifiable fact. For example, it is either a "clear-cut crime" for whistleblowers, like the Plaintiffs in this action, to discuss tax information that

---

[4] Lowell tries to minimize this accusation given the use of "apparent." (ECF 11-1 at 25, n.19). While "apparent" may suggest that a statement is an opinion in some contexts, that is not true here. "Apparent" has two incredibly different meanings: (1) "obvious" and (2) "seeming." APPARENT, Black's Law Dictionary (12th ed. 2024). The context of the June 29, 2023, letter shows that "apparent" was intended to mean "obvious." *See* (ECF 11-38).

12

Congress has lawfully made public, or it is not.[5] It is either "simply [a] felony" for the Whistleblowers to discuss such information, or it is not. And there is either a "cognizable legal protection" for the Whistleblowers' activities, or there is not.

By identifying the current split in authority over the application of Section 6103 in his Motion, Lowell now admits that the Whistleblowers' activities are, in fact, not "clear-cut crime[s] unprotected by any whistleblower statute." (*See* ECF 11-1 at 28). Stated otherwise, if the various Courts of Appeal cannot agree as to the application of Section 6103, surely the Whistleblowers' activities cannot be a "clear-cut crime" or a crime without "cognizable legal protection." Lowell's accusations are express statements of fact that are provably false, not nonactionable legal opinions.

      b.      **If the Court believes Lowell's accusation of illegal conduct is not sufficiently factual, those accusations are at least actionable mixed opinions based on undisclosed facts.**

To the extent the Court disagrees that Lowell's Defamatory Allegations are not express statements of fact, a reasonable juror could at least determine that Lowell's accusations against the Whistleblowers implied assertions of verifiable facts that were undisclosed. The D.C. Court of Appeals has instructed courts to employ a four-part test to determine if a statement is actionable:

> (1) "examine the allegedly defamatory words in the context of the entire document in which they appear";
> (2) determine whether the statements "could be said to imply undisclosed defamatory facts";
> (3) "consider whether the allegedly defamatory words are susceptible to proof of their truth or falsity"; and
> (4) "consider the context in which the document containing the allegedly defamatory reference is published."

*Florio v. Gallaudet Univ.*, 619 F. Supp. 3d 36, 46 (D.D.C. 2022), *aff'd but criticized for other reasons*, 119 F.4th 67 (D.C. Cir. 2024). As discussed above, the allegedly defamatory words are

---

[5] While Lowell forces a dichotomy between the Whistleblowers' activities before and after the Committee released the transcripts, the Whistleblowers did not disclose that their efforts related to Biden before the congressional transcripts were published. *See* Section B.3.

disprovable. The third prong of the test favors the Whistleblowers. So too do the remaining prongs.

(1)    Lowell implied undisclosed defamatory facts.

Taking the second prong of the *Florio* test first, "when a defendant provides the facts underlying the challenged statements, it is 'clear that the challenged statements represent his own interpretation of those facts,' which 'leav[es] the reader free to draw his own conclusions." *Bauman*, 377 F. Supp. 3d at 11 n. 7 (quoting *Adelson v. Harris*, 973 F. Supp. 2d 467, 490 (S.D.N.Y. 2013)). But, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich*, 497 U.S. at 18–19.

Lowell failed to disclose the facts underlying his accusations of a "clear-cut crime" that has no "cognizable legal protection," and he thus deprived the readers of an opportunity to draw their own conclusion as to the legality of the Whistleblowers' actions. Lowell failed to disclose at least three important facts. First, while Lowell now admits that there is a circuit split as to the application of Section 6103, he withheld that information from readers when he made the at-issue accusations. (*See e.g.*, ECF 11-38 and 11-43). Second, Lowell did not disclose that the majority of judges in this District that appear to have ruled on the issue follow the circuit courts that allow for a public-domain exception.[6] *See id.*; *see also* Section B.2. Third, Lowell failed to disclose that the D.C. Circuit has explicitly found a public-domain exception to Rule 6(e), where information has become "sufficiently public." (*See e.g.*, ECF 11-38 and 11-43; *see also* Section B.1 (discussing the District's rulings as to Rule 6(e))). Despite omitting these facts from his Defamatory Allegations, Lowell also failed to suggest that the accusations were offered as a mere legal opinion

---

[6] Indeed, when determining whether the Whistleblowers' actions were illegal and whether Lowell's accusations to the contrary were defamatory per se, the law of this District controls. *See* Section B; *see also* Restatement (Second) of Torts § 571, cmt. e (1977).

or debatable conclusions. *See id.* Quite the opposite. As described above, Lowell spoke with finality. His Defamatory Allegations communicate to readers that the Whistleblowers were undoubtedly guilty of "simple felonies."

Lowell did not speak with "loose" language that would otherwise "negate the impression that [he] was seriously maintaining that [the Whistleblowers] committed the crimes of [violating Section 6103 or Rule 6]." *See Milkovich,* 497 U.S. at 21. His accusations are mixed opinions, at minimum, and are thus actionable.

> (2)    Lowell, as a highly regarded criminal-defense attorney, made the accusations when calling for an investigation into the Whistleblowers.

Lest there be any doubt, the first and fourth prongs of the *Florio* test consider the context of the words and the publications at issue. And the context in which Lowell's Defamatory Allegations were made is telling. When trying to draw the line between fact and opinion, the context of the statement is crucial. *Bauman*, 377 F. Supp. 3d at 11 ("[T]he answer, quite often, 'depends on the context of the statement in question.'") (quoting *Competitive Enter. Institute v. Mann*, 150 A.3d 1213, 1241 (D.C. 2016)).

The context here is dispositive of Lowell's Motion, given Lowell's caliber as a criminal defense attorney and the circumstances surrounding Lowell's accusations. "*Williams v. Burns*, 540 F. Supp. 1243, 1247 (D. Colo. 1982)). "[A]n attorney is never justified in knowingly making false statements about an opposing party"—statements made in zealous advocacy are no exception. *Punturo v. Kern*, 2018 WL 5276142, at *6 (Mich. Ct. App. Oct. 16, 2018) (internal quotations omitted). Nor are an attorney's statements automatically characterized as opinion merely because the attorney made the comments for purposes of representing a client. *Id.*

To the contrary, attorneys are held to a higher standard than laypersons when using legal terms. *Id.* at *8. When an attorney "uses a specific legal term to describe a person's behavior, a

15

reasonable juror would be well-supported in understanding that term as an accusation of a specific crime, not rhetorical hyperbole[.]"[7] *Id.*; *see also Powell*, 554 F. Supp. 3d 42 at 58; *Wade v. Wood*, 2024 WL 1075482, at *5 (N.D. Ga. Mar. 12, 2024) (finding that an attorney "created a false and misleading picture of the facts" when accusing the opposing party of violating specific laws in a specific manner because the attorney based the opinion, published to the public via an online forum, on an incomplete set of facts).

Lowell is "one of the country's foremost white collar defense and trial lawyers." (ECF 1, ¶ 14). He touts himself as being "widely viewed as counsel of choice for individuals facing government investigations and potential indictments." *Id.*; *see also* Winston & Strawn LLP*, Abbe David Lowell*, https://www.winston.com/en/professionals/lowell-abbe-david (last visited Dec. 18, 2024). And his experience includes "navigating clients through congressional and administrative proceedings[.]" *Id.*

With this reputation and experience, Lowell accused the Whistleblowers of committing "clear-cut" felonies by specifically violating Section 6103 and Rule 6(e). (ECF 1, ¶¶ 20-28). The various letters to Congress, in which the Defamatory Allegations sit, each span several pages. (*See e.g.*, ECF 11-43). Lowell did not stop at lodging the accusations against the Whistleblowers. (*See* ECF 11-38, 11-43). He also called for an investigation, writing to the Committee:[8]

---

[7] To be sure, even where a layperson accuses another of being guilty of a specific crime, the accusation is actionable if it is false. *Wade*, 2024 WL 1075482, at *5 ("So, too, is the more specific accusation that a person is guilty of extortion [susceptible of being proven false, and thus an actionable statement].") (collecting cases); *Kevorkian v. Am. Med. Ass'n*., 237 Mich. App. 1, 8, 602 N.W.2d 233 (1999) ("Language that accuses or strongly implies that someone is involved in illegal conduct crosses the line dividing strongly worded opinion from accusation of a crime.").

[8] To be clear, Plaintiffs' claims do not arise from the fact that Lowell sent these materials to the Committee. The claims are based on Lowell's release of the same material and publication of it to the media. Nonetheless, that he initially wrote to the Committee and made these requests is important to the context and, as a result, to the understanding readers would have.

> [The August 14, 2023 letter from Mr. Biden's counsel to the U.S. Attorney in Delaware] compiles the ***literally dozens of improper disclosures*** of protected and confidential grand jury and tax information by the IRS agents assigned (and some unnamed sources) during the investigation. If your intent is honestly to ensure "impartial justice," this list of potential and ***actual misconduct*** should give all of you and your Committees ***something real to investigate.***

(ECF 11-43 at 4 (emphasis added); *see also* ECF 11-38 at 6 (after characterizing the Whistleblowers' activities as "simply felonies," stating to the Inspector General, "We would appreciate a response detailing the steps the Office is taking to protect the rights of our client and other individuals associated with this investigation."); *id.* at 4 ("We have appealed to the Government since July 2022 […] to stop the illegal leaks of grand jury and taxpayer information regarding this investigation by politically motivated agents [such as Shapley].")).

Lowell relies almost entirely on cases that involve laypersons, rather than attorneys, to argue that his Defamatory Allegations are nonactionable opinions on an undecided legal issue.[9] *See Florio*, 619 F. Supp. 3d at 46 (a president of a university and a newspaper published the president's statements that a fraternity "had become the face of systematic racism in [the] community, with photographs of [a Nazi] salute and use of [hooded] robes being shared on social media.");[10] *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (when ruling on a statement made by an escrow agent, stating: "Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements ***by laypersons*** that purport to interpret the meaning of a statute or regulation are opinion statements, and not

---

[9] Lowell cites a single case involving an attorney: *Pitt Chem. & Sanitary v. Generational Equity*, 2013 WL 11247583 (Pa. Super Dec. 24, 2013). But this case is otherwise distinguishable because the factual basis for the attorney's opinion in *Pitt Chem.* was entirely disclosed. *Id.*

[10] *Florio* also confirmed that no facts had been left undisclosed and none were in dispute. 619 F. Supp. 3d at 46–47.

32128974

statements of fact." (emphasis added)); *Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002) (same, quoting *Coastal Abstract Serv.*); *Hellmuth,* 2016 WL 642352, at *1(an architect, with the assistance of a tax consulting firm, opined that the opposing party "most likely" violated an IRS rule regarding rebates for public projects); *Perez v. Weaver*, 2022 WL 22863218, at *4 (E.D. Ky. Dec. 14, 2022), *report and recommendation adopted*, 2023 WL 11897158 (E.D. Ky. Apr. 21, 2023) (a layperson opining on the legality of his arrest by a police officer); *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1101 (N.D. Cal. 1999) (a layperson published statements about another on a website and internet chat groups); *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 592 (D.D.C. 1995), *aff'd*, 82 F.3d 484 (D.C. Cir. 1996) (in the context of a Lanham Act claim, taxicab companies stated they were properly licensed to provide services to corporate account customers).

Lowell also fails to cite cases that involve a circuit split like the dispute here. Rather, Lowell's cases involve either questions of law that no court has ruled on at all or matters where no facts were left undisclosed by the speaker. *Coastal Abstract Serv., Inc.*, 173 F.3d at 731 (finding statements by an escrow agent were nonactionable where "the correct application of [the statute at issue] was not knowable to the parties at the time [of the statement]" as no court had issued a binding opinion); *Hellmuth,* 2016 WL 642352, at *3 ("There has been no binding legal decision regarding whether a government entity may require a designer to pay a rebate in exchange for the allocation of a tax deduction," only government agencies with no authority opining on the legality); *Perez*, 2022 WL 22863218, at *4 (the defamatory statements were based entirely on a video, which was posted on YouTube along with the alleged defamatory statements); *Pitt Chem.*, 2013 WL 11247583 finding the factual basis for the attorney's opinion was entirely disclosed); *Nicosia*, 72 F. Supp. 2d at 1102 ("The disclosed, underlying facts, however, reveal that [the listener] understood [the speaker] was using hyperbolic and figurative language, that [the speaker] De Rooy

was merely expressing her opinion," but finding for another statement that the speaker failed to "disclos[e] her basis for believing [the plaintiff] lied" to support the accusation of perjury); *Dial A Car, Inc*, 884 F. Supp. at 592 (in the context of a Lanham Act claim, the governing authority had not yet interpreted the at-issue municipal regulation).

And Lowell's cited cases involve language that clarifies that the speaker was expressing an opinion, not stating a fact. *See Florio*, 619 F. Supp. 3d at 46–47 (the phrase "'face of' connotes an inherently subjective assessment and is the sort of 'imaginative expression' and 'rhetorical hyperbole' that typifies non-actionable opinion"); *Hellmuth*, 2016 WL 642352, at *3 an architect opining that the opposing party "most likely" violated an IRS rule by requesting a rebate in exchange for the allocation of a tax deduction to the architect for work on a public project). In fact, Lowell cites a case in which the court found that the defendant was not clearly expressing an opinion as to one of his accusations against the plaintiff. In *Rodriguez v. Panayiotou*, the court found:

> [The defendant's] statements went well beyond generalized accusations, subjective comments, or other "classic rhetorical hyperbole." Instead, [the defendant's] statements asserted the precise factual nature of his accusation, and charged [the plaintiff] with the specific and objectively verifiable acts of [lewd conduct]. These are provably false factual assertions of what Rodriguez was accused of having committed.

314 F.3d at 987. Thus, the court found the accusation was actionable as defamation.[11]

Lowell's cases are not factually comparable to the dispute before this Court. But what Lowell's cases do contribute to this dispute is the principle that context matters. *See e.g.*, *Hellmuth*, 2016 WL 642352, at *3 ("A review of the entire publication indicates that [the architect's]

---

[11] Lowell seems to have cited *Rodriguez* for the court's ruling on another accusation. (*See* ECF 11-1 at 27). The court found that an accusation of entrapment was not actionable because it was a layperson's opinion of the law. 314 F.3d at 987. Again, Lowell is not a layperson.

32128974

statements reflect its tentative legal opinion, as opposed to a verifiable factual assertion that Defendants have engaged in illegal conduct."). Here, Lowell is not a layperson. And as detailed in Section A.2.b.(1) above, he also failed to disclose at least three material facts when opining that the Whistleblowers committed "clear-cut felonies." And he did not hedge his opinion or otherwise make clear that it was debatable. Because Lowell is a "foremost white collar defense" attorney and publicly condemned the Whistleblowers for "clear-cut" felonies while calling for their investigation, a reasonable juror could conclude that Lowell implied that the Whistleblowers clearly violated both Section 6103 and Rule 6(e).

Finally, Lowell argues that government officials' conduct is often the subject of debate. While this is true, such debates do not allow someone to freely defame with impunity. *See Powell*, 554 F. Supp. 3d at 58 ("[T]here is no blanket immunity for statements that are 'political' in nature: as the Court of Appeals has put it, the fact that statements were made in a 'political context does not indiscriminately immunize every statement contained therein.'" (quoting *Weyrich*, 235 F.3d at 626). As the U.S. Supreme Court says:

> [The law] recogni[zes] [] the [First] Amendment's vital guarantee of free and uninhibited discussion of public issues. But there is also another side to the equation; we have regularly acknowledged the important social values which underlie the law of defamation, and recognized that society has a pervasive and strong interest in preventing and redressing attacks upon reputation.

*Milkovich*, 497 U.S. at 22. Lowell is not excused from his Defamatory Allegations simply because they involve government officials. The accusations are actionable as express statements of fact or mixed opinions based on undisclosed facts.

## B.     The Whistleblowers Did Not Violate Rule 6(e) or Section 6103.

Lowell is also mistaken as to whether a public-domain exception is recognized as to Rule 6(e) and Section 6103. When considering whether a false statement of the commission of a crime

carries a defamatory meaning and is defamatory per se, it is the criminal law in the place of alleged

publication—here, the District of Columbia—that is relevant. Restatement (Second) of Torts §

571, cmt. e (1977). And under the law of this District, a public-domain exception exists for Rule

6(e) and is likely to exist for Section 6103.

1.    D.C. Courts recognize a public-domain exception to Rule 6(e).

To be clear, the Whistleblowers never disclosed grand jury information to Congress, their

attorneys, or the public.  Lowell has failed to identify any such disclosure with specificity, relying

only on broad assertions of Rule 6(e) violations. Regardless, everything the Whistleblowers

publicly discussed was already in the public domain through the congressional release of their

testimony. The rule of grand jury secrecy is not absolute. Wright & Miller, *Fed. Prac. & Proc.* §

107 (5th ed.)*.* "[G]rand jury secrecy is not unyielding when there is no secrecy left to protect." *In*

*re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) (per curiam) (internal

quotations and punctuation omitted). Thus, "once-secret grand jury material becomes sufficiently

widely known, it may lose its character as Rule 6(e) material." *Id.* (internal quotations and

punctuation omitted). And "information that […] is derived independently from the grand jury

process typically is not covered [by Rule 6(e)]." Wright & Miller, *supra,* § 107*.*

Simply put, a public-domain exception applies to the confidentiality requirements of Rule

6(e). The D.C. Circuit has confirmed so. In *In re Grand Jury Subpoena, Judith Miller*, the D.C.

Circuit considered whether to release material redacted from a concurring opinion in an earlier

appeal as well as from ex parte affidavits. 493 F.3d at 152–53 (also disclosing that the Circuit had

previously unsealed grand jury information from the concurring opinion and affidavits that had

been revealed in the indictment or "had been otherwise widely reported."). While the moving party

sought to unseal all of the redacted material, the Circuit explained that "materials concern[ing]

still-secret grand jury matters [] must remain sealed." *Id.* at 154. But certain grand jury information

21

had been disclosed to the public via the underlying trial or via an interview of a grand jury witness on CBS Evening News. *Id.* at 154-55. As to that information—information that had been disclosed to the public—the Circuit held that the "cat is out of the bag" and so the information must be released from the purview of Rule 6(e). *Id.* at 154-55 (internal quotations omitted).

*In re North*, 16 F.3d 1234 (D.C. Cir. 1994) compels the same conclusion. Oddly, Lowell relies on *In re North* to argue the opposite.[12] (ECF 11-1 at 33). Quoting a portion of the case, Lowell argues that "government officials are generally 'obligated to stand silent' and heed their pre-existing bond of secrecy' even when there has been some public disclosure of grand jury information." *Id.* The Circuit acknowledged that such is the "***general*** rule." 16 F.3d at 1245 (emphasis added). But the Circuit continued, explaining that there is an exception: "when information is sufficiently widely known[,] [] it has lost its character as Rule 6(e) material." *Id.* And so the Circuit released a report filled with once-secret grand jury information, declaring: "Rule 6(e) is designed to protect secrecy. That secrecy no longer exists [because the information is widely known to the public]." *Id.* Lowell's reliance on *In re North* is thus misplaced.

2.  <u>The Courts in this District typically recognize a public-domain exception to Section 6103.</u>

The reasoning behind the public-domain exception to Rule 6(e) also makes sense as applied to Section 6103. And the judges in this District agree.[13] *See Glass v. United States*, 480 F. Supp. 2d 162, 166 (D.D.C. 2007) ("'The recording of a federal tax liens [*sic*] in the County Recorder's

---

[12] Lowell also relies on *In re Sealed Case No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999), pulling dicta from a footnote. (ECF 11-1 at 33). But the holding of this case—and reasoning behind it—supports the Whistleblowers. *See In re Sealed Case No. 99-3091*, 192 F.3d at 1001-02 (finding no Rule 6(e) violation and stating, in part: "[W]e take judicial notice that the President's status as a witness before the grand jury was a matter of widespread public knowledge well before the New York Times article at issue in this case was written; the President himself went on national television the day of his testimony to reveal this fact").

[13] All but one.

32128974

Office ... places information in the liens ... into the public domain. Because information in the public domain is no longer confidential there can be no violation of Section 6103[.]'") (quoting *William E. Schrambling Acct. Corp. v. United States*, 937 F.2d 1485, 1489–90 (9th Cir.1991)); *Koerner v. United States*, 471 F. Supp. 2d 125, 128 (D.D.C. 2007) (same); *Pollinger v. United States*, 539 F. Supp. 2d 242, 253 (D.D.C. 2008) ("Based on Section 6103(k)(6) and the related regulations, several courts in this District and others have concluded that a notice of lien does not give rise to an unauthorized disclosure action.") (collecting cases); *Tax Analysts v. I.R.S.*, 97 F. Supp. 2d 13, 19 (D.D.C. 2000), *rev'd in part on other grounds*, 294 F.3d 71 (D.C. Cir. 2002) (approving of the IRS's practice of "releas[ing] [] return information that can be readily identified as part of a public record, and redaction of return information that is either (1) not part of the public record or (2) cannot be readily identified as part of the public record."); *but see Bancroft Glob. Development v. United States*, 330 F. Supp. 3d 82, 101 (D.D.C. 2018).

D.C. law controls. *See Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 857 (D.C. Cir. 2006); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1338 n.6 (D.C. Cir. 2015). But even if this Court were to consider the decisions of the U.S. Circuit Courts of Appeal, the split in authority favors the Whistleblowers—not Lowell. Two Circuits explicitly recognize a public-domain exception. *Lampert v. United States*, 854 F.2d 335, 338 (9th Cir. 1988) ("We believe that Congress sought to prohibit only the disclosure of confidential tax return information. Once tax return information is made a part of the public domain, the taxpayer may no longer claim a right of privacy in that information."); *Rowley v. United States*, 76 F.3d 796, 801 (6th Cir. 1996) ("The material disclosed by the Internal Revenue Service was precisely the same information that was recorded in the Register of Deeds' offices, and was clearly already a part of the public domain.").

Another three circuits follow a middle-of-the-road approach developed by the Seventh

32128974

Circuit, under which courts look to the source from which the information was disclosed to determine if the disclosure was unlawful. *Thomas v. United States*, 890 F.2d 18, 21 (7th Cir. 1989) (finding the IRS could publicize Tax Court opinions with what would otherwise be confidential tax information); *Johnson v. Sawyer*, 120 F.3d 1307, 1323 (5th Cir. 1997) ("That interest is furthered by a construction of § 6103 that premises a violation on the source of the information claimed to be wrongfully disclosed, not its public or non-confidential status."); *Noske v. United States*, 1993 WL 264531, at *2 (8th Cir. July 15, 1993) (finding the IRS did not violate Section 6103 by providing a copy of a judicial opinion to a newspaper)[14]; *Rice v. United States*, 166 F.3d 1088, 1091 (10th Cir. 1999) ("We adopt th[e] reasoning [in *Thomas*, 890 F.3d at 21]. If, as the government claims, the two press releases about which [the taxpayer] complains were based solely on public documents and proceedings, *i.e.* the IRS public affairs officer's review of the indictment, her attendance at trial and sentencing, and her research into the possible criminal penalties, then [the taxpayer's] assertion that the government violated § 6103 by issuing the press releases must fail."). In creating this approach, the Seventh Circuit explained:

> [W]e believe that the definition of return information comes into play only when the immediate source of the information is a return, or some internal document based on a return, as these terms are defined in § 6103(b)(2), and not when the immediate source is a public document lawfully prepared by an agency that is separate from the Internal Revenue Service and has lawful access to tax returns.

*Thomas*, 890 F.2d at 21.

Only one Circuit directly agrees with Lowell. *Mallas v. United States*, 993 F.2d 1111, 1120

---

[14] The district court in the underlying matter expressly recognized a public-domain exception to Section 6103. *Noske*,1992 WL 235847, at *3 ("Once ... tax return information is properly in the public record of a judicial proceeding, the information is no longer confidential. ***Plaintiffs no longer have a reasonable expectation of privacy respecting their return information***.") (quoting *Solargistics Corp. v. United States*, 89–2 USTC ¶ 9610 (N.D. Ill., Oct. 6, 1989) (emphasis added)).

(4th Cir. 1993) (declining to add a public-domain exception because such an exception is not included in the language of the statute). But *Mallas* is inapposite. In *Mallas*, the IRS "continued to disseminate reports to tax shelter investors of [the taxpayers], describing [the taxpayers'] criminal convictions, even after a panel of [the Fourth Circuit] reversed those convictions." 993 F.2d at 1114. Striking down the IRS's argument that it merely republished the previous court order and that the order rendered the information nonconfidential, the Fourth Circuit declined to adopt a public-domain exception to Section 6103, stating: "The fact that an event is not wholly private does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *Id.* at 1120 (internal citation and punctuation omitted).

Unlike the overturned judicial opinion in *Mallas*, the information at issue here was broadcasted to the nation by Congress. Congress placed the transcripts on their website and issued a press release. There, Congress declared, in part: "***The American people deserve to know that when it comes to criminal enforcement, they are not on the same playing field as the wealthy and politically connected class.***" U.S. House Comm. on Ways & Means, *Smith: Testimony of IRS Employees Reveals Biden IRS, DOJ Interfered in Tax Investigation of Hunter Biden, Revealing Preferential Treatment for Wealthy and Politically Connected,* https://tinyurl.com/preferential-treatment (last visited Dec. 10, 2024) (emphasis in original). The manner of Congress's release thus destroyed any potential for the information to remain confidential.

And so the circuit split weighs in the Whistleblowers' favor, arguably 6-1 and at least 4-21—the outlier being inapposite.

   3.    The Whistleblowers did not violate the law in this District.

The Whistleblowers did not violate Rule 6(e) or Section 6103, because the Whistleblowers never disclosed any grand jury information and ***Congress's lawful release*** of the transcripts of the Whistleblowers' testimony caused the once-confidential tax information to become widely known

25

to the public. The media repeatedly reported on Congress's decision to release the transcripts and on the contents of the transcripts themselves. *See e.g.*, Google News, https://tinyurl.com/7-day-media-reports (listing results for media reports on "Hunter Biden Investigation" within the first week of the congressional transcripts being disclosed). Thus, any tax information the Whistleblowers publicly discussed was no longer secret, since it had become widely known.

The same conclusion is reached for the Section 6103 claims using the Seventh Circuit's "source" test in *Thomas*, 890 F.2d 18. The source of the information at issue in this case is almost entirely the transcripts released by Congress. (*See* ECF 1 *generally*). It was not a tax return or other internal document. Thus, the Whistleblowers' discussion of the same is lawful under *Thomas*. 890 F.2d at 21.

Further, while Lowell alleges that the Whistleblowers disclosed information beyond that included in the transcripts, Lowell is wrong.[15] And in any event, Lowell relies on his 949 pages of

---

[15] Lowell claims that there was no comment as to willfulness during the Whistleblowers' congressional testimony. (ECF 11-1 at 14, 24). This is wrong. (*See* ECF 11-4 at 65 ("So essentially for 2014, we had found that Hunter didn't report any of the money he earned from Burisma. So the reason why this is important is because Hunter set it up this way, to not -- to essentially earn the money through his friend's corporation and then have his friend pay him back half of the money as loans, quote, unquote, loans."); at 67 ("I have brought up that if we went based on an evasion theory, that he evaded these taxes -- so one more step to this is Hunter to his counsel told them about this scheme. So basically said -- Devon Archer was handling the taxes and I was taking some of the money as loans. So there's documentation of this and the date, everything. So we viewed that as he's lying to his attorney. He's telling his attorney exactly what happened, and he's trying to cover it up."); at 103-04 ("2018 was so significant because, at the same time he is writing his book, he is having the returns prepared. And the statements in his book completely contradicted what was being deducted on his tax return."); at 105 ("He also tried to -- the money that he earned from Hudson West III, he tried to say that that was a loan. Same thing we have all going along back to Burisma -- I'm loaning from my own capital in the company -- even though he didn't put any capital in the Hudson West III. It was zero. So he was trying to say that it was a loan. But the accountants were so good that they really dug into it, and they were like: No, no, no, you can't deduct this -- or you can't take this as a loan on your tax return."); at 165 ("[W]e spent so much time working through the issue and showing how it wasn't a loan at all. There's no indication of it whatsoever. Again, I go back to -- you can't loan yourself your own income."); *see also* ECF

exhibits to make his argument. But those exhibits may only be considered for the fact that they were published. *Shive-Ayala*, 2022 WL 782412, at *2 n.1 (citation omitted). At this stage of the proceeding, the Whistleblowers' well-pleaded allegations must be accepted as true. *Rollins*, 703 F.3d at 129–30. To rule otherwise would allow Lowell to impermissibly limit the realm of evidence that this matter would be decided on before any discovery.

As for the information discussed by the media before Congress' release of the transcripts, Biden was the first individual to disclose that he was subject to a criminal investigation by the IRS, in December 2020. (ECF 1, ¶ 20). Neither the Whistleblowers nor Lytle disclosed Biden's name when requesting to make protected disclosures to the Committee. Nor did they disclose his name when discussing their request with the media.[16] While the media reported that Lytle was referring to Biden before the Committee released the transcripts, they did not source that claim to the Whistleblowers or their attorneys, who have no control over whether the media publishes such

---

11-3 at 72 (responding to whether Biden engaged in "an affirmative scheme" to "avoid paying taxes," Shapley answers: "This is, like, textbook, I learned at basic training nominee stuff."); at 112-113 (discussing "the type of conduct" taken by Biden in regard to his 2018 tax return: "[I]t becomes apparent to the accountants during this interaction that [Biden is] putting things on here that aren't [] true business expenses. So the accountants create a representation letter [] because they didn't believe what he was saying, but they didn't -- if they were going to prepare his return, they had to listen to what he was saying.")).

Lowell also cites Biden's amended complaint against the IRS in another matter currently pending before this District (ECF 11-1 at 30, citing *Biden v. U.S. Internal Revenue Serv.*, No. 23-02711-RC (2023)), for the claims that Ziegler never said that he recommended felony charges in his congressional testimony and that Shapley never disclosed Jason Jones as a corroborating source in his testimony. But as explained in that litigation, both of Lowell's claims are completely inaccurate. *See Biden*, at ECF 30 at 36-39.

[16] Lowell admits to this fact in his Motion: "Shapley claimed that he could not 'confirm' the specific investigation at issue[.]" (ECF 11-1 at 16). Lowell then faults Shapley (and previously, Lytle) for not refuting the media's conclusions that the investigation was about Biden. *Id.* at 14-16. Not only would refuting the media's conclusion be a lie, but Lowell does not provide any law under which an IRS agent must "refute" conclusions of the media. *See id.* Shapley's refusal to confirm the conclusion is what matters, and that was proper.

hypotheses from others. At bottom, Biden's name was not given to the media by the Whistleblowers or Lytle prior to Congress releasing the transcripts. The Whistleblowers did not disclose any Rule 6(e) information or violate Section 6103, and Lowell's statements to the contrary are false.

**C.     Lowell Acted With Actual Malice.**

1.     Actual Malice May Be Shown By Cumulative, Circumstantial Inferences From Facts Alleged.

Defamation defendants do not often admit that they published their falsehoods knowing they were false or with reckless disregard for truth. Thus, "a plaintiff may [plead and] prove the defendant's subjective state of mind through the cumulation of circumstantial evidence, as well as through direct evidence." *Tavoulareas v. Piro*, 817 F.2d 762, 789 (D.C. Cir. 1987); *see also Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1253 (9th Cir. 1997) ("As we have yet to see a defendant who admits to entertaining serious subjective doubt about the authenticity of an article it published, we must be guided by circumstantial evidence. By examining the editors' actions we try to understand their motives."); *Levesque v. Doocy*, 560 F.3d 82, 90 (1st Cir. 2009) ("Because direct evidence of actual malice is rare, it may be proved through inference … and circumstantial evidence.").

The actual malice inquiry, therefore, asks "whether the statements in issue ***and the circumstances under which they were made*** ... are of a character which the principles of the First Amendment ... protect." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (quotations omitted) (emphasis added). "A court typically will infer actual malice from objective facts." *Bose Corp. v. Consumers Union of U.S.*, 692 F.2d 189, 196 (1st Cir. 1982), *aff'd*, 104 S. Ct. 1949 (1984) (citing *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)). "These facts should provide evidence of negligence, motive, and intent such that an accumulation

28

32128974

of the evidence and appropriate inferences supports the existence of actual malice." *Id.*

The evidentiary standards for proving actual malice guide the assessment of whether the Whistleblowers have met the pleading standard—that is, whether the Whistleblowers have "plausibly" alleged Lowell's actual malice "above the speculative level." *See Bell Atl. Corp.*, 550 U.S. at 570. The Whistleblowers "must [be] give[n] the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 18 (D.C. Cir. 2008). "The test is whether the complaint is plausible, not whether it is less plausible than an alternative explanation." *Palin v. New York Times Co.*, 940 F.3d 804, 815 (2d Cir. 2019).

2.    The Cumulation Of Reasonable Inferences From Lowell's Statements In His Published Letters Support The Plausible Inference of Actual Malice With Respect To Whether The Whistleblowers Disclosed Information Not Already in the Public Domain.

Lowell takes an overly narrow view of the Whistleblowers' actual malice-related allegations. Lowell argues that the Complaint has only one paragraph with facts regarding what Lowell knew when he made the Defamatory Allegations and that these statements amount to "conclusory assertions" that do not state a plausible theory of actual malice. (ECF 11-1, at 35-36).

Off the top, Lowell again does not address one of the two theories of defamation per se alleged by the Whistleblowers—his statement that the Whistleblowers, as IRS agents, disclosed protected information that was not public *irrespective* of whether it was illegal. Lowell's actual malice analysis continues to focus on Lowell's allegation of illegal conduct. *Id.* There is ample evidence from which it can be inferred that Lowell acted with serious doubt about truth—if not actual knowledge of falsity—with respect to whether the Whistleblowers disclosed protected information about the Biden case that was not otherwise in the public domain.

Lowell's August 14 letter to Special Counsel Weiss and the AUSA for the District of Delaware (republished with his September 14 Letter) contains multiple references, citations, and

quotations to both the Whistleblowers' testimony. (*See* ECF 11-41 at n. 3-6, 9-10, 12-14, 16). In fact, Lowell almost entirely relies on the transcripts of the Whistleblowers' congressional testimony for the first six pages of his ten-page August 14 letter. Lowell's September 14 Letter also references what occurred during The Whistleblowers' congressional testimony. (ECF 11-43 at 2).

It is clear from these letters that Lowell is intimately familiar with the substance of the Whistleblowers' congressional testimony. A lawyer of Lowell's experience and caliber (*see* Section C.3.a) with a detailed familiarity with the record, would have known that neither Whistleblower ever disclosed anything that was not already discussed in the congressional record. Even the sole specific example Lowell offers in his Motion to support his contention that the Whistleblowers disclosed non-public information is knowingly false. *See* Section A.2; *see also* Section B.3, n. 15.

Lowell claims that Ziegler's statement to Fox News that "his team 'provided a ton of evidence that showed willfulness'" revealed non-public information. (ECF 11-1 at 30). But he knows better. As described above, both Shapley and Ziegler provided testimony before Congress clearly talking about evidence of willfulness or Biden's willfulness more generally. *See* Section B.3, n. 15. Lowell's review of the transcripts must have demonstrated to him that the Whistleblowers discussed this willfulness issue before Congress and, therefore, that such testimony was included in the information Congress released to the public. Therefore, a reasonable inference is that Lowell knew it was false when he said the opposite in his September 14 Letter. Lowell is certainly within his prerogative to try to persuade a jury that an attorney of his caliber, experience, and reputation who was writing to a government lawyer charged with prosecuting his client did not make a thorough review of the transcripts before citing to them. Lowell's prerogative

notwithstanding, whether the Whistleblowers have stated a plausible case for a contrary inference should be beyond any reasonable dispute. Of course, a jury could determine that Lowell reviewed the transcripts he cited and knew his statement was false when he made it.

Cumulatively with the facts and evidence demonstrating the relation of the parties and the circumstances under which Lowell's allegations were made, Lowell's preconceived narrative that the Whistleblowers did something wrong, his ill will and animus toward the Whistleblowers, and Lowell's personal motives to defame the Whistleblowers (*see* Section C.3), the Whistleblowers have made out a plausible case that Lowell acted with actual malice when he claimed that the Whistleblowers disclosed information not already in the public domain.

3.  <u>The Cumulation Of Reasonable Inferences From the Facts Set Out In the Complaint And The Letters On Which The Whistleblowers' Claims Are Based Plausibly Allege Actual Malice With Respect To The Allegation That The Whistleblowers Engaged In Illegal Conduct.</u>

Lowell further ignores that the Whistleblowers' Complaint, and the various correspondence that form the bases for their claims, show facts related to: (i) Lowell's legal experience and expertise; (ii) Lowell's omission of exculpatory information and changing stances on the certainty of the Whistleblowers' supposedly illegal conduct; (iii) the relation of the parties and the circumstances of the Defamatory Allegations; (iv) the preconceived narrative of which Lowell's Defamatory Allegations were a continuing part; and (v) Lowell's ill will and animus toward the Whistleblowers. Lowell also ignores that this Court must credit the Whistleblowers with all reasonable inferences that can be gleaned from these facts. Collectively, these facts and their reasonably permissible inferences plausibly allege that Lowell acted with actual malice when he claimed the Whistleblowers engaged in illegal conduct as well.

As detailed below, when viewing the alleged facts through the correct lens, the Whistleblowers have met their burden to demonstrate at the pleading stage that it is ***at least***

plausible Lowell acted with actual malice.

        a.        **Lowell's Legal Experience and Expertise.**

The defendant's personal experience and expertise on the subject matter of the statement is probative of actual malice. For example, in *U.S. Dominion, Inc. v. Powell*, the court found allegations that, among other things, "an experienced litigator" like the defendant "either knew (or should have known) about these grave problems with her experts' reliability, and thus she must have entertained serious doubts as to the truth of her statements or at a minimum acted with a high degree of awareness of [their] probable falsity." 554 F. Supp. 3d at 61–62 quotations omitted) (alterations in original).

Lowell has been a licensed attorney since 1978 and has been admitted to practice in the District of Columbia since 1981. (ECF 1, ¶ 6; *see also Attorney Search*, D.C. Bar Directory (last visited Dec. 17, 2024), https://tinyurl.com/y3xepers)). He holds himself out as "one of the country's foremost white collar defense and trial lawyers" that is "widely viewed as counsel of choice for individuals facing government investigations and potential indictments." (ECF 1, ¶ 14). Lowell's significant legal experience includes representing clients in IRS investigations and enforcement actions. (ECF 1, ¶ 6; *see also Lowy v. I.R.S.*, C 10-00767 SI, 2011 WL 1211479 (N.D. Cal. Mar. 30, 2011), *as modified* (Nov. 28, 2011) (identifying Lowell as counsel of record for FOIA requester related to Section 6103 dispute)).

Related to Lowell's legal experience and area of practice, the specific defamatory language used here is further evidence of actual malice. This is not a case of a layperson's misuse of legal terminology. *See, e.g.*, *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 121 (Tex. 2000) (layperson misusing legal jargon is generally not evidence of actual malice because it is not apparent that a nonlawyer would understand the significance of incorrect legal terms); *Orr v. Argus-Press Co.*, 586 F.2d 1108, 1117 (6th Cir. 1978) (newspaper's report interpreting charges in indictment not

evidence of actual malice). This case is just the opposite. Lowell is not a layperson; instead, he is a seasoned, white collar litigator, with specific experience in litigating issues regarding grand jury and taxpayer information. The accusations republished by Lowell, and made anew in his September 14 Letter, did not mince words or use incorrect legal terminology. Instead, they specifically and clearly accused the Whistleblowers of committing a specific federal crime by improper disclosure of grand jury and taxpayer information.

An attorney is also presumed to know the rules and laws in the jurisdictions in which he practices. *See In re Day*, 717 A.2d 883, 890 (D.C. 1998) ("An attorney is held responsible for knowing the rules of the jurisdiction in which she is admitted to practice."); *Bass v. Bair*, 514 F. Supp. 2d 96, 100 (D.D.C. 2007) (holding, in context of Title VII suit, "[a]n attorney is presumed to have a working knowledge of Title VII's filing requirements" and his or her client is constructively charged with that knowledge.). It can be reasonably inferred from Lowell's legal experience, substantive practice area, and geographic center of his practice in the District of Columbia that he knows it is not illegal to disclose grand jury information already in the public domain. And the factual allegations allow for the reasonable inference that Lowell acted recklessly in assuming the D.C. Circuit would not find similarly to tax return information that is no longer secret. That is especially so considering his legal practice in D.C., and given that federal district courts in D.C. have determined there is a public-domain exception for § 6103 similar to grand jury materials. *See* Section B.2.

b.    **Omission of Material Information and Changing Stances.**

The omission of exculpatory or material information from a statement may support a finding of actual malice. *See Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1092 (3d Cir. 1988) (the "choice to credit only the portions that were damaging to [plaintiff] and not the portion that would have neutralized those damaging statements bears on [defendant's] subjective state of

mind and may point to actual malice"); *Tomblin v. WCHS-TV8*, 434 F. App'x 205, 211 (4th Cir. 2011) (omission from news report stating allegation of adult on child abuse of fact that agency report specified allegation was really child on child abuse indicative of actual malice). "[A]n omission may be so glaring and may result in such a gross distortion that by itself it constitutes some evidence of actual malice." *Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 426 (Tex. 2000).

As to his accusation that the Whistleblowers violated Section 6103, Lowell's accusations were not equivocal or qualified. They were steadfast and absolute that the Whistleblowers "illegally leaked information protected by Rule 6(e) and Section 6103" that were "not protected by any exceptions," and "violate[d] federal laws protecting grand jury and taxpayer information." (ECF 1, ¶¶ 25, 28).

Lowell never bothered to clarify his Defamatory Allegations by also disclosing the fact that he knew there was a split of legal authority on whether the Whistleblowers' conduct was illegal—which, by his briefing, he admits he knew. Lowell also failed to disclose that federal district court judges in D.C.—the law governing the illegality of the conduct he accused the Whistleblowers of committing—have almost all consistently held that there is a public-domain exception to Section 6103. *See* Section B.2 (listing cases). These omissions are glaring, especially considering Lowell's stature, legal experience, and expertise, and are themselves evidence of actual malice.

A similar result obtains for his accusation that the Whistleblowers violated Rule 6(e). Lowell's accusations of illegal disclosures in violation of Rule 6(e) were also unqualified and unconditional. (ECF 1, ¶¶ 25, 28).[17] But the D.C. Circuit holds that "widely known" grand jury

---

[17] Again, the Whistleblowers never disclosed any grand jury information about Biden to anyone and only ever discussed information already in the public domain.

information is no longer protected by Rule 6(e). S*ee In re Grand Jury Subpoena, Judith Miller*, 493 F.3d at 154–55, citing *In re North*, 16 F.3d at 1245 and *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 499, 505 (D.C. Cir.1998)). Lowell's omission of this fact—when the information at issue had to have been "widely known," since Biden himself disclosed he was under investigation by the IRS in December 2020 (ECF 1, ¶ 20) and it was disclosed by a Congressional committee following an investigation—also supports an inference of actual malice.

And Lowell has now changed his absolutist tune about the Whistleblowers' supposed illegal conduct. Again, Lowell's Defamatory Allegations that the Whistleblowers violated these provisions were definitive and without exception. But now, Lowell's primary defense is that these accusations are not actionable because, as to Section 6103, there is a 4-1-1 circuit split on whether there is a "public domain" exception. (ECF 11-1 at 31–32). And as to Rule 6(e), "there comes a point 'when information is sufficiently widely known that it has lost its character as Rule 6(e) material.'" *Id.* at 32. These arguments are a far cry from the undiluted and unreserved accusations that the Whistleblowers violated those provisions that form the basis of the Whistleblowers' claims.

Lowell is not even consistent in his briefing on whether the "public domain" exceptions apply to Section 6103. Sometimes he claims, consistent with his September 14 Letter, that the Whistleblowers' conduct "involved serious illegality." (ECF 11-1 at 8; *see also id*. at 5–6 (arguing Section 6103 is clear and strictly prohibits any disclosures like those of the Whistleblowers)). Other times, he argues about a circuit split, claiming "four federal Courts of Appeals have interpreted the taxpayer protection statute at issue to *not* include any such 'public domain' exception," or that the supposed violations of Rule 6(e) are not as clear cut as Lowell once made them out to be. (ECF 11-1 at 9, 30–31, 36).

Lowell's "change in tune" and inconsistency on his position between his September 14 Letter and his Motion, and within the Motion itself, further allows for the reasonable inference that Lowell acted with actual malice. *See Powell*, 554 F. Supp. 3d at 62 (finding that allegation of lawyer defendant's "shifting positions reflect actual malice" at the pleading stage).

c.      **Relation of the Parties and Circumstances Attending the Allegations.**

"Actual malice may be inferred from the relation of the parties, the circumstances attending the publication, the terms of the publication itself, and from the words or acts of the defendant before, at, or after the time of the communication." *DR Partners v. Floyd*, 228 S.W.3d 493, 498 (Tex. App. 2007). The sole relation between the Whistleblowers and Lowell is that the Whistleblowers were investigating the crimes of Lowell's client, Biden, and acting as whistleblowers in Congress, to report that their efforts to investigate him were being quashed by powerful forces. (ECF 1, ¶¶ 4–5, 7-9, 12). Lowell's letters reveal that he most certainly viewed this relationship as antagonistic and oppositional. This fact also supports an inference of actual malice on Lowell's part at the time he made his false and Defamatory Allegations.

Lowell's Defamatory Allegations were central to his effort to help Biden escape responsibility for tax crimes to which he later pleaded guilty. The language, tone, and tenor of Lowell's defamatory letter and the statements it republished tell the story: Despite Biden's now-admitted criminal conduct, Lowell was concerned that pro-Biden interference by senior DOJ and IRS officials was in jeopardy. He made the Defamatory Allegations as part of a strategy to undermine the Whistleblowers' credibility as IRS whistleblowers, hoping to derail the congressional investigation into how and why Biden might be avoiding meaningful prosecution. To this end, Lowell mischaracterized the Biden investigation as a political witch hunt led by IRS agents who were purportedly committing serious crimes. *See, e.g.*, (ECF 11-38, at 2 ("At this point it is irrefutable that federal agents' criminal acts have inflicted irreversible damage and prejudiced

36

a fair and objective review of the facts, evidence, and process in this case."); *id.*, at 6 ("Our client cannot receive fair process where the very rules established to protect that process have been routinely and egregiously violated by the Government's own case agents. We are particularly concerned that these agents' leaks seem calculated to undermine scheduled proceedings in this matter."); *id.* ("It would be hard to imagine a more grave and demonstrable prejudice stemming from continued Rule 6(e) and Section 6103 violations than those taking place presently."); ECF 11-43, at 2 ("In fact, Chairman Comer, on May 22, 2023, during an interview on Fox News, you actually admitted your real purpose had nothing to do with proper oversight and your Committee's goal was 'absolutely' to move the needle of political support for the 2024 election."); *id.*, at 3 ("…we actually agree that the 'Department has [not] handled a case involving the President's son in an impartial manner.'"); *id.*, at 3 ("…your Committees have been willing to pretend to provide a forum for real whistleblowers, when your goals were to … give a forum for the so-called agents or their representative to violate federal laws protecting grand jury and tax information.")).

To be clear, this matter would not be before the Court if the Biden team had confined its attacks to the defense of Biden in the congressional investigation. But in a hypocritical effort to destroy the Whistleblowers' credibility and reputation ***in public***, Lowell also made his false allegations to the media while telling Congress that he was doing just that. Whereas what the Whistleblowers publicly said—only after the information was in the public domain—was ***true***, Lowell's publication to the media was not. It was made up of lies. And they were lies told in a manner that intentionally misled the public about the facts and the law.

In this context, the relation of the parties (adverse investigators/witnesses-criminal defense counsel) and the circumstances in which the statements were made (part of a strategy to undermine their credibility on behalf of Lowell's client) are factual indicia of knowledge of falsity or reckless

disregard for truth that support the plausible inference of actual malice.

        d.    **Preconceived Narrative.**

"'[E]vidence that [defendant] conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice," and" in this case, is "quite powerful evidence.'" *Harris v. City of Seattle*, 152 F. App'x 565, 568 (9th Cir. 2005) (quoting Smolla, *supra,* § 3:71 (2d ed.)).

The Biden defense team's false narrative that included allegations of illegality by the Whistleblowers, aimed at undermining their credibility as investigators and whistleblower witnesses and of the Biden investigation more generally, did not begin with Lowell's September 14 Letter. Biden's other counsel, Christopher Clark, had been spreading such missives as early as February 8, 2023. Then, Clark sent a letter to the Department of Justice Inspector General, demanding an investigation of supposed leaks and that the "agents responsible for these leaks" be identified. (ECF 11-41 at 13). This was months before the Whistleblowers made any sort of public statements or provided any Congressional testimony. In other words, Biden's defense team had developed a preconceived narrative from the beginning. And, in publishing the Defamatory Allegations to the media, Lowell demonstrated his unyielding commitment to that false narrative as evidenced by, among other things, his efforts to mischaracterize facts and law to fit into it.

Once again, it is Lowell's unprivileged republication of the Defamatory Allegations to the media that gives rise to this lawsuit. While they were initially in a publication to Congress in the context of Lowell's defense efforts on Biden's behalf, Lowell was clearly concerned that preconceived narrative was not sufficiently persuasive to garner the support he was looking for from Congress. That Lowell moved that false narrative (and the Defamatory Allegations) into the public arena shows that Lowell's Defamatory Allegations were simply a continuation of the preconceived narrative concocted by Biden's defense team and a continued attempt to make the

evidence conform to that narrative. Those facts are further indicia that Lowell acted with knowledge of falsity or reckless disregard for truth and support a plausible inference that Lowell acted with actual malice.

e. **Ill Will and Animus.**

Ill will and animus bear on the actual malice analysis. While it "is insufficient by itself to support a finding of actual malice," *Tavoulareas*, 817 F.2d at 795, ill will is nevertheless a relevant fact that can, cumulatively, support the existence of actual malice. There is no question that Lowell had significant animus toward the Whistleblowers when he published his September 14 Letter, as shown by the statements he makes in it:

- For months now, one or more of you, or others acting at your behest, have done everything you can to interfere with "impartial justice" and the proper workings of a criminal investigation involving our client, Robert Hunter Biden.

- Your improper interference now affecting a federal prosecutor is a much greater threat to society than the 11 days that Mr. Biden possessed an unloaded gun.

- In this unprecedented display of partisan congressional manipulation, your Committees have been willing to ***pretend to provide a forum for real whistleblowers***, when your goals were to misuse that process to dump wholesale protected tax information about Mr. Biden on the public; ***give a forum for the so-called agents or their representative*** to violate federal laws protecting grand jury and tax information…

- That letter compiles ***the literally dozens of improper disclosures of protected and confidential grand jury and tax information by the IRS agents assigned*** (and some unnamed sources) during the investigation. If your intent is honestly to ensure "impartial justice," ***this list of potential and actual misconduct should give all of you and your Committees something real to investigate***.

- The change to a rare misdemeanor failure to file/pay and a felony diversion for possession of a firearm (and now the actual filing of those firearm charges) occurred only *after* a chain of events ***starting with the improper disclosures*** arranged by you and your Committees of the ***so-called "whistleblowers"*** claims of prosecutorial misconduct and your, and the right-wing media with whom you coordinate, taking up those claims.

- On July 25, 2023, Chairman Smith even went so far as to write to the federal judge in this matter to request that she consider at Mr. Biden's initial appearance and plea hearing ***the fruits of the theater you created with your so-called "whistleblowers."***

(ECF 11-43).

The acerbic tone and tenor of Lowell's letter overall and specifically his direct characterization of the Whistleblowers is unmistakably a representation of his ill will and animus toward them. That is only confirmed by the fact that Lowell's letter calls for a retaliatory investigation **into the Whistleblowers**.[18]

It is also more than obvious from the content and tone of Lowell's letter that he was using it as an opportunity to publicly vent about his frustration with the progress of Biden's criminal case. Lowell's letter was sent **after** Biden's original sweetheart plea deal had been rejected by a federal judge in Delaware, an outcome that Lowell's letter placed largely on the shoulders of the Whistleblowers. (*See* ECF 11-1, at 23 ("By August 2023, the original, contemplated plead agreement in Delaware fell apart…"); ECF 11-43 at 2 ("Your blatant efforts achieved your goal as the U.S. Attorney in Delaware today filed gun charges against our client … and who reversed his earlier decision that such charges were not warranted."); *id.* at 3 ("Ironically, then, your requests actually provide a vehicle to demonstrate the truth, show how completely wrong your claims of preferential treatment have been, display how differently and unfairly Mr. Biden has been treated, and expose how you and your Committees' efforts achieved your improper goal of interfering with the correct outcome of a thorough five-year investigation.")). As Lowell put it, "this is not remotely how things are supposed to work." (ECF 11-1 at 8). These facts are further indicia of Lowell's knowledge of falsity or reckless disregard for truth, evidence that is part of the overall puzzle demonstrating a plausible claim based on actual malice.

---

[18] Lowell's call for an investigation into the Whistleblowers did not age well against his assertion that Biden's tax crimes amounted to "a rare misdemeanor failure to file/pay." Plaintiffs' patriotic efforts to reveal backroom favoritism and unequal justice proved accurate. Lowell's characterization of Biden's tax crimes did not—as demonstrated by Biden's own admission to a number of tax-related felonies.

**D.    Lowell's Publication Was Not Privileged Because The Whistleblowers Do Not Sue For Lowell's Publication To Congress—They Sue For Lowell's Admitted Publication To The Media.**

As with his previous arguments, Lowell argues that the legislative privilege exonerates him from defamation liability while ignoring the obvious: Lowell did not just publish the Defamatory Allegations to Congress; he republished them to the media while boldly telling Congress that he was doing so, purposefully broadcasting "[the] materials [] to the public." (*See* ECF 11-43 at 4). The September 14 Letter trumpets its own, actionable republication. The Whistleblowers sue Lowell for this republication, not for his letter itself. (*See* ECF 1, ¶¶ 15, 19, 20, 23, 26, 27 (alleging publication to the media)).

Lowell makes little effort to argue that his admitted republication to the media is not actionable. (*See* ECF 11-1 at 37-39).[19] Lowell instead criticizes the Whistleblowers for failing to allege more specifically to whom his Defamatory Allegations were published—but does so based on outdated law. *Id.* at 39, n. 7.

"[T]he District of Columbia does not use a heightened pleading standard for defamation claims." *Ruifang Hu v. K4 Sols., Inc.*, 2020 WL 1189297, at *11 (D.D.C. Mar. 12, 2020) (*citing Oparaugo v. Watts*, 884 A.2d 63, 77 (D.C. 2005) and *Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1172–73 (D.C. 1997)) (addressing issue of language of the defamatory statement). "[C]ontrary to Defendant's reading of the law, the D.C. Court of Appeals has rejected the imposition of any heightened pleading standard with respect to defamation claims, including that the plaintiff identify the speaker and the listener." *Kambala WA Kambala v. Checchi & Co. Consulting*, 280 F. Supp. 3d 131, 141 (D.D.C. 2017) (citing *Clampitt v. Am. Univ.*, 957 A.2d 23,

---

[19] Nor could he. Defamatory publications to the media are not subject to any privilege. *See Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1042 (D.C. 2015) (absolute privileges applicable to statements made in official proceedings do not extend to publications to media because such publications are "gratuitous and bear[] no relevance whatsoever to the [official] proceedings.").

32128974

43 (D.C. 2008)). Courts that impose a heightened pleading standard, such as requiring particular allegations as to the "time, place, content, speaker, and listener," have "impose[d] an inaccurate gloss on the law—one that has been rejected by the D.C. Court of Appeals and the D.C. Circuit." *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 118 (D.D.C. 2013) (citing *Oparaugo*, 884 A.2d at 76 and *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d at 215 n. 2).

This is consistent with FRCP 8(a), under which "Plaintiff is required only to provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Kambala*, 280 F. Supp. 3d at 141. Under both D.C. law and FRCP 8, the Whistleblowers were not required to plead **with particularity** the third-party media companies to which Lowell published the Defamatory Allegations. "On a motion to dismiss, [the Whistleblowers] need not allege—and certainly need not prove—the identity of one or more persons who read the allegedly defamatory statements." *Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 137 (D.D.C. 2009). "Instead, [they] need only allege enough information 'to apprise' [Lowell] of the persons *or* category of persons to whom the [defamatory statements] were published." *Id.* (emphasis added) (citations omitted).

The Whistleblowers have done just that in their Complaint. By alleging that Lowell republished the Defamatory Allegations to the media (ECF 1, ¶ 15, 19, 20, 23, 26, 27), the Whistleblowers have sufficiently stated "the category of persons to whom" the Defamatory Allegations were made. Lowell has sufficient notice of the claim to enable him to admit or deny that he published the September 14 Letter package to the media, whether that be Politico, Reuters, CNN, Fox News, NBC, or other outlets.

And even if more pleading specificity were generally required for defamation claims, the Whistleblowers should be excused from the requirement to particularly identify the persons to

whom Lowell published the Defamatory Allegations because the evidence supporting those allegations is largely in Lowell's hands.

To the extent there is a higher pleading standard for defamation claims, it should be relaxed "when it appears that defendant has superior knowledge of the facts, so long as the pleading gives notice of the issues sufficient to enable preparation of a defense." *Toranto v. Jaffurs*, 297 F. Supp. 3d 1073, 1094–95 (S.D. Cal. 2018). That includes facts with respect to the specific identity of the persons to whom a defamatory statement was made because "'[l]ess particularity is required when it appears that defendant has superior knowledge of the facts, so long as the pleading gives notice of the issues sufficient to enable preparation of a defense.'" *Id.* (quoting *Okun v. Sup. Ct.*, 629 P.2d 1369, 1378 (Cal. 1981)).

The Whistleblowers have inferior knowledge of the persons in the media to whom Lowell made his Defamatory Allegations available. Lowell himself, however, clearly says that he was making his September 14 Letter package available to the public. On that basis, Lowell has superior knowledge of the specific media to whom he published the Defamatory Allegations and is capable of preparing a responsive pleading—and a defense at large. His Motion must fail, accordingly.

**E.    In the Event the Court Finds That Their Claims Have not Been Sufficiently Pleaded, the Whistleblowers Should Be Granted Leave to Amend.**

The Whistleblowers alleged adequate facts and inferences to state a plausible theory of defamation. But if the Court disagrees, the Whistleblowers should be permitted to amend their Complaint to allege the facts and inferences more explicitly.[20] *See* Exhibit 1, attached hereto (a chart outlining specific allegations to be included in an amended complaint, if necessary).

For example, the Whistleblowers would allege that, despite Lowell's allegations of "clear-

---

[20] A formal motion under FRCP 15, complying with LCvR 7 and LCvR 15.1, is forthcoming.

cut crimes," they have not been the subject of any discipline by the IRS and, to their knowledge, none has been proposed.

And the Whistleblowers would supplement their allegations regarding the press. They would allege that Shapley was not the source of the *Washington Post* article that Lowell focuses on in his Motion (ECF 11-1 at 13), as evidenced by a letter on **which Lowell and Clark were copied**, giving consent to the *Post* to identify him as the source if he were. *See* Ex. 1. And they would identify at least one news source that confirmed receipt of Lowell's September 14 Letter, confirming that Lowell had made the "materials available to the public." *Id.*

The Whistleblowers would also detail the House Committee Chairmen's statements that acknowledged the Whistleblowers' compliance with the law when testifying about Biden's confidential information and that such confidentiality would be no more if the congressional transcripts were officially released to the public. *Id.*; *see also Consideration of Documents Protected Under Internal Revenue Code Section 6103*, H. Comm. on Ways & Means, 108th Cong., (June 22, 2023), available at https://tinyurl.com/executive-session-transcript, at 106, Chairman Jason Smith explaining, "If this motion is adopted … any discussion that was within this executive session … will be made public. ***So, you could talk about anything that was discussed in the executive session -- along with all the whistleblower depositions -- everything that is not redacted.***") (emphasis added). These statements are in the transcripts with which Lowell was intimately familiar, as demonstrated by his letters. (*See* ECF 11-43; *see also* ECF 11-41).

Further, the Whistleblowers would include rulings from Biden's criminal case in  District of Delaware. The judge in that matter rejected Biden's arguments that the congressional transcripts should be sealed because they improperly released information protected by Section 6103 and Rule 6(e), finding in part that Biden had "failed to make any specific showing of harm." *United States*

*v. Biden*, 1:23-mj-00274-MN (D. Del., order filed Aug. 17, 2023), ECF 42 at 2.

If the Court finds that the Complaint does not allege sufficient facts to state a plausible theory of defamation, these additional facts would supplement the Whistleblowers' allegations as to falsity, malice, and to whom the defamatory messages were published.

## CONCLUSION

Plaintiffs—long-time public servants—seek no favors. They need no pardon because they never violated the law. For all these reasons, Lowell's Motion should be denied in its entirety.

Dated: December 18, 2024

BROWNSTEIN HYATT FARBER SCHRECK, LLP


By: */s/ Mitchell J. Langberg*
    Mitchell J. Langberg, Bar No. NV008
    mlangberg@bhfs.com
    Travis F. Chance, Bar No. NV010
    tchance@bhfs.com
    100 North City Parkway, Suite 1600
    Las Vegas, NV  89106
    Telephone:  702.382.2101
    Facsimile:   702.382.8135

    EMPOWER OVERSIGHT
    WHISTLEBLOWERS & RESEARCH

    Michael S. Zummer, Bar No. LA0013
    mzummer@empowr.us
    5500 Prytania St. #524
    New Orleans, LA 70115
    Telephone: 504.717.5913

    *Attorneys for Plaintiffs*

32128974

## CERTIFICATE OF SERVICE

This is to certify that on the 18th day of December, 2024, **PLAINTIFFS GARY SHAPLEY AND JOSEPH ZIEGLER'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ABBE LOWELL'S MOTION TO DISMISS** was electronically filed with the Clerk of Court using the Court's CM/ECF system that will automatically serve notification of such filing and a copy thereof to all counsel of record:

Michael E. Stoll
Jason M. Weinstein
STEPTOE LLP
1330 Connecticut Ave., NW
Washington, DC 20036
Telephone: 202-429-3000
Facsimile: 202-429-3902
tbarba@steptoe.com
jweinstein@steptoe.com

Charles Michael
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
Tel.: 212.506.3900
cmichael@steptoe.com

*Attorneys for Defendant*

/s/ Mitchell J. Langberg

32128974