## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GARY SHAPLEY and

JOSEPH ZIEGLER,

        *Plaintiffs,*

*v.*

ABBE LOWELL,

        *Defendant.*

Civil Action No. 24-2646 (RJL)

## MEMORANDUM OPINION

October 15, 2025 [Dkt. #11, 18]

This case arises from the multi-year criminal investigation into Hunter Biden's tax compliance. Two of the Internal Revenue Service's special agents involved, plaintiffs Gary Shapley and Joseph Ziegler, revealed details about the investigation to Congress and the media due to their concerns that the Department of Justice and the Internal Revenue Service were giving Hunter Biden preferential treatment during the course of the investigation. Plaintiffs filed this suit against one of Hunter Biden's counsel, Abbe Lowell, alleging that he sent defamatory statements to the media that accuse plaintiffs of violating federal law. Lowell now moves to dismiss the Complaint for failure to state a claim. For the reasons stated below, the Court **GRANTS** Lowell's Motion to Dismiss and **DENIES** plaintiffs' Motion for Leave to File an Amended Complaint for futility.

## BACKGROUND

### I.    Factual Allegations

Gary Shapley ("Shapley") and Jospeh Ziegler ("Ziegler") (together "plaintiffs"), special agents at the Internal Revenue Services ("IRS"), worked on the Department of Justice's ("DOJ") and IRS's multi-year criminal investigation of Hunter Biden ("Biden"). Compl. [Dkt. #1] ¶¶ 4–5. Shapley and Ziegler allege that their efforts to investigate Biden's tax compliance "were met with suppression from various political and institutional forces, leading them to reasonably believe that the Department of Justice—including the U.S. Attorney's Office for the District of Delaware and the Department of Justice's Tax Division—and the IRS were providing Biden with politically motivated preferential treatment." *Id.* ¶ 9. Due to these concerns, Shapley and Ziegler disclosed information about the investigation to Congress and the public. *Id.* ¶¶ 4–5, 9, 12.

According to the Complaint, Shapley and Ziegler first disclosed information regarding the criminal investigation under oath in hearings before the House Committee on Ways and Means. *See id.* ¶¶ 9, 11, 21. On June 22, 2023, the Committee on Ways and Means voted to release the transcripts of plaintiffs' testimony, "along with certain supplemental materials," to the public. *Id.* ¶¶ 21–22. After that, members of Congress "publicly discussed the officially-released, previously confidential information" regarding the criminal tax investigation of Hunter Biden. *Id.* ¶ 22. Shapley and Ziegler allege that, after Congress made their testimony public, they then discussed the investigation publicly. *Id.* According to the Complaint, they did not, however, "discuss any confidential tax information about Hunter Biden that had not already been included in the Committee on

Ways and Means' June 22, 2023, release." *Id.*; *see id.* ("At no time prior to that release did they identify Biden or disclose any protected taxpayer information to anyone not authorized to receive it.").

On September 14, 2023, in response to a document request from several congressional committees, Abbe Lowell ("Lowell"), one of Hunter Biden's attorneys, sent a letter to the committee chairmen that "included many of the prior communications Biden's attorneys had sent to government agencies and congressional committees" regarding the Biden investigation. *Id.* ¶ 17. This letter and its enclosed correspondences contain twelve "Defamatory Allegations" that the Complaint identifies as "A" through "L" (hereinafter "challenged statements"). *See id.* ¶¶ 17–29; *see also* Def.'s Mot. to Dismiss ("Def.'s Mot.") [Dkt. #11], Exs. 10 ("Apr. 21, 2023 Letter") [Dkt. #11-12], 36 ("Jun. 29, 2023 Letter") [Dkt. #11-38], 37 ("Jun. 30, 2023 Letter") [Dkt. #11-39], 39 ("Aug. 14, 2023 Letter" [Dkt. #11-41], 41 ("Sept. 14, 2023 Letter") [Dkt. #11-43].[1] Shapley and Ziegler allege that the challenged statements in these correspondences "falsely accused [them] of violating grand jury secrecy rules [Federal Rule of Criminal Procedure 6(e)] and the taxpayer confidentiality statute (26 U.S.C. § 6103)." Compl. ¶ 17. These correspondences "were published to third parties, including the media," which plaintiffs allege make each of the challenged statements "a new and distinct act of defamation." *Id.* ¶¶ 15, 18–19, 23.

---

[1] The Court takes judicial notice of the letters because the Complaint incorporates them by reference. *See* Compl. ¶¶ 17–20, 23–28; *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ("documents . . . appended to [a defendant's] motion to dismiss and whose authenticity is not disputed . . . may be considered here because they are referred to in the complaint and are integral to" the plaintiff's claim). At this stage, the Court will not take judicial notice of the parties' additional exhibits nor consider plaintiffs' separate filing that objects to Lowell's exhibits. *See* Pls.' Objs. to Def.'s Request for Judicial Notice in Supp. of Mot. to Dismiss [Dkt. #16-2].

A.    September 14, 2023 Letter

In the September 14, 2023 letter, Lowell wrote to Representatives James Comer, Jim Jordan, and Jason Smith. *See* Sept. 14, 2023 Letter at 1. Lowell accuses the representatives of attempting to interfere with the Biden investigation and "move the needle of political support for the 2024 election." *Id.* He further asserts that the Committee on Oversight and Accountability, the Committee on the Judiciary, and the Committee on Ways and Means abused their congressional powers:

> In this unprecedented display of partisan congressional manipulation, your Committees have been willing to pretend to provide a forum for real whistleblowers, when your goals were to misuse that process to dump wholesale protected tax information about Mr. Biden on the public; to give a forum for the so-called agents or their representative to <u>violate federal laws protecting grand jury and tax information</u> and even to allow a purported Oversight Committee hearing to be the forum for Rep. Marjorie Taylor Greene, not to ask oversight-related questions but to display to the world tawdry naked photos of our client—conduct that is wholly inappropriate by a sitting United States congresswoman. Can you explain how all of that promotes "impartial justice?"

*Id.* at 2 (emphasis added to indicate the challenged statement); *see* Compl. ¶ 28 ("Defamatory Allegation L"). Further down, Lowell writes that, "[k]nowing that your practice has been to *publicly* disclose materials provided to you in your so-called oversight (either through your favorite media outlets or by simply dumping them on your websites), and often doing so on a selective, self-serving basis, we are also making these materials available to the public." Sept. 14, 2023 Letter at 3.

B.    April 21, 2023 Letter

In addition to the September 14, 2023 letter, four of the enclosed correspondences

contain allegedly defamatory statements. Taking them in chronological order, the first letter, dated April 21, 2023, is from Christopher Clark ("Clark"), one of Hunter Biden's attorneys, to Brad Weinsheimer, Associate Deputy Attorney General. *See* Apr. 21, 2023 Letter at 1. Clark writes: "As we are sure you are aware, earlier this week, an agent from the IRS leaked information to Congress and the press, apparently in violation of federal law, regarding the investigation of our client, Robert Hunter Biden." *Id.* (challenged statement emphasized); *see* Compl. ¶ 20 ("Defamatory Allegation A"). He continues: "Today someone in the government leaked that we will be meeting with you next week. It is impossible to have a fair process where the government is leaking information regarding its investigation of our client on a daily basis." Apr. 21, 2023 Letter at 1. The letter concludes with a request that DOJ inform Biden's counsel "of the steps it is going to undertake to end these pernicious leaks in a case of national interest." *Id.* Shapley and Ziegler allege that Clark made these statements concerning Shapley, Ziegler, or both, and that "Lowell knew readers of his September 14 letter would understand the same thing." Compl. ¶ 20.

C.    June 29, 2023 Letter

The next letter, dated June 29, 2023, is from Clark to Michael Horowitz, DOJ's Inspector General. *See* Jun. 29, 2023 Letter at 1. Clark wrote the Inspector General to "lay out the applicable law regarding disclosure, the unauthorized disclosures here, and the prejudice to [his] client." *Id.* In the introduction, Clark asserts that "[t]he dissemination of grand jury and taxpayer information, including through multiple nationally-televised on-camera interviews of IRS Supervisory Special Agent Gary Shapley, is a clear-cut crime

unprotected by any whistleblower statute or other federal law, and is causing continued and unaddressed harm to our client." Jun. 29, 2023 Letter at 1 (challenged statement emphasized); *see* Compl. ¶ 24 ("Defamatory Allegation B"). He continues: "At this point it is irrefutable that federal agents' criminal acts have inflicted irreversible damage and prejudiced a fair and objective review of the facts, evidence, and process in this case." Jun. 29, 2023 Letter at 1 (challenged statement emphasized); *see* Compl. ¶ 23 ("Defamatory Allegation C").

After explaining that the grand jury secrecy rule (Federal Rule Criminal Procedure 6(a)) and the taxpayer confidentiality statute (26 U.S.C. § 6103) prohibit the disclosure of information concerning criminal and tax investigations, Clark asserts that "it is now apparent that IRS Supervisory Special Agent Shapley is the source of at least many of the most damaging and troubling leaks." *See* Jun. 29, 2023 Letter at 1–3 (challenged statement emphasized); *see* Compl. ¶ 24 ("Defamatory Allegation D"). Specifically, "[o]n or about April 19, 2023, Supervisory Special Agent Shapley sent a letter to Congress, through his attorney, making allegations of 'preferential treatment and politics improperly infecting decisions and protocols' in this investigation. The letter was presented to news outlets the same day." Jun. 29, 2023 Letter at 3. He continues: "As was intended, the letter was then reported and reposted in publications across the globe and quickly became the subject of many thousands of social media posts." *Id.*

Clark then discusses a *New York Post* article published on May 22, 2023. *Id.* According to the letter, the article identified, but did not name, "yet another federal agent who illegally leaked information protected by Rule 6(e) and Section 6103, this time 'a

special agent in the IRS's international tax and financial crimes group and worked on the Hunter Biden case since it was opened in 2018.'" *Id.* (challenged statement emphasized); *see* Compl. ¶ 25 ("Defamatory Allegation E") (alleging that the challenged statement is about Ziegler). "The article reported that both of the more recent leakers (the Special Agent and the individual now identified publicly as Supervisory Special Agent Shapley) purportedly had 'expressed concerns internally for years about the case being swept under the rug' and that both leakers 'lay out extensive claims of retaliation in new disclosures to Congress.'" Jun. 29, 2023 Letter at 3. The letter then outlines additional details disclosed in the *New York Post* article, including a letter to Congress from a second source, "a trove of leaked internal government emails," and Shapley's media appears. *Id.*

After providing that context, Clark asserts that Shapley's conduct is unlawful:

> Whatever Supervisory Special Agent Shapley's purported reasons for reaching out to Congress, there is no justification or cognizable legal protection for his disclosures of confidential grand jury and tax information on nationally televised news broadcasts or media outlets, and such disclosures are not protected by any exceptions to either Rule 6(e) or Section 6103. Supervisory Special Agent Shapley's unlawful disclosures, including through interviews with various news outlets, are quite simply felonies.

*Id.* at 4 (challenged statement emphasized); *see* Compl. ¶ 25 ("Defamatory Allegation F"). Clark concludes by explaining how the "leaking of grand jury and taxpayer information is an unprecedented injustice and immeasurably prejudicial" to his client. Jun. 29, 2023 Letter at 5 (citation modified).

Plaintiffs alleged that Lowell republished this letter "despite knowledge" that "[m]embers of Congress publicly discussed the officially-released, previously confidential

7

information," and that they "did not discuss any confidential tax information about Hunter Biden that had not already been included in the Committee on Ways and Means' June 22, 2023, release." Compl. ¶ 22.

D.    June 30, 2023 Letter

Next up is a letter dated June 30, 2023 from Lowell to Representative Jason Smith, Chairman of the Committee on Ways and Means. Jun. 30, 2023 Letter at 1. Lowell's purpose in writing the letter was to express his views that Chairman Smith's "release of [the transcripts and exhibits of plaintiffs' interviews] violated the spirit, if not the letter, of the tax laws and federal rules governing investigations"; that his "attempt to protect the IRS agents was a transparent effort to provide cover to those with a bias and an axe to grind so deep and sharp as to have allowed them to avoid answering for their own conduct under oath"; and that Chairman Smith "then choreographed the dissemination of incomplete half-truths, distortions, and totally unnecessary details about Mr. Biden." *Id.* To the first point, Lowell also writes: "At least once before, in April 2023, Mr. Shapley used Congress to provide him cover to make other unauthorized disclosures when he wrote a letter claiming political interferences with his investigation which was given to the media likely before Members of Congress could open their copies." *Id.* at 3 (challenged statement emphasized); *see* Compl. ¶ 26 ("Defamatory Allegation G").

E.    August 14, 2023 Letter

The final letter, dated August 14, 2023, is from Lowell to David Weiss, Special Counsel for the Department of Justice, and Assistant United States Attorneys Leo Wise, Derek Hines, and Benjamin Wallace. Aug. 14, 2023 Letter at 1. He wrote "concerning

[his] ongoing concerns about the consistent and unabated improper disclosures of information about [the Hunter Biden] investigation and its effects on Mr. Biden's rights." *Id.* In the letter, Lowell summarizes various leaks of grand jury, taxpayer, and other protected information; outlines Shapley's and Ziegler's congressional testimony; and details eight media interviews where Shapley or Ziegler "discussed the Government's investigation of Mr. Biden, the supposed guilt or innocence of [Lowell's] client, and specific line-items of [Biden's] tax returns." *Id.* at 2–8. With respect to plaintiffs' congressional testimony, Lowell writes: "The testimony of Messrs. <u>Shapley and Ziegler,</u> as well as certain of the exhibits appended thereto, are replete with <u>illegally disclosed grand</u> <u>jury and tax return information,</u> as well as fruits of search warrants that evidently have been sealed by court order, all arising from the Government's and the grand jury's investigation of our client." *Id.* at 3 (challenged statement emphasized); *see* Compl. ¶ 27 ("Defamatory Allegation H").

After outlining Shapley's and Ziegler's media interviews, Lowell repeats Clark's earlier assertion that this conduct is unlawful:

> Whatever the purported reasons for reaching out to Congress, there is no justification or cognizable legal protection for their disclosures of confidential grand jury and tax information on nationally televised news broadcasts or media outlets, and such <u>disclosures are not protected by any exceptions to either Rule 6(e) or Section 6103</u>. <u>Mr. Shapley's and Mr. Ziegler's disclosures,</u> including through interviews with various news outlets, <u>are quite simply crimes</u>.

Aug. 14, 2023 Letter at 8 (challenged statements emphasized); *see* Compl. ¶ 27 ("Defamatory Allegation[s] I" and "J"). Plaintiffs also allege that a footnote following this

allegation is defamatory: "The Government can and does prosecute knowing violations of Rule 6(e) pursuant to district courts' contempt powers under Section 401(3) of Title 18, as well as pursuant to multiple felony criminal statutes." *See* Aug. 14, 2023 Letter at 8 n.24; Compl. ¶ 27 ("Lowell falsely stated that . . . the agents had made 'knowing violations of the law that constitute contempt and felony crimes' ('Defamatory Allegation K').").

## II.    Procedural History

Plaintiffs filed suit on September 13, 2024, each alleging a defamation claim against Lowell. *See* Compl. ¶¶ 30–49; *id.* at 10 (prayer for relief). They seek no less than $10,000,000 each for having "suffered injuries to [their] reputation[s], shame, mortification, and mental anguish," in addition to punitive and exemplary damages. *Id.* ¶¶ 38–39, 48–49. Lowell then filed a motion to dismiss on November 18, 2024. *See* Def.'s Mot.; Def.'s Mem. in Supp. of Mot. ("Def.'s Br.") [Dkt. #11-1]; Def.'s Reply in Supp. of Mot. ("Def.'s Reply") [Dkt. #20]. Plaintiffs oppose the motion and move for leave to amend the Complaint. *See* Pls.' Opp'n to Def.'s Mot. ("Pls.' Opp'n") [Dkt. #16]; Pls.' Mot. to Amend. Compl. ("Mot. to Amend.") [Dkt. #18]. Lowell opposes the motion. *See* Def.'s Reply at 23–25. The motion to dismiss is now fully briefed.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the pleading standard set forth in Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader

is entitled to relief." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting Rule 8(a)(2)). A "short and plain statement" is one that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Complaint must also include "factual content" sufficient to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The Court may "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ANALYSIS

The Complaint contains two counts. The first count alleges that Lowell defamed Shapley because the challenged statement attributed to him ("Allegation A–D and F–L") "taken in the context of all the content of Lowell's September 14, 2023, letter and the circumstances under which it was published, directly convey the false and defamatory message that Shapley violated the law." Compl. ¶ 31. He further alleges that the challenged statements directly and by implication convey that "Shapley made disclosures of confidential information that was not already in the public domain." *Id.* ¶ 32. The second count alleges that Lowell defamed Ziegler ("Allegation A–C, E, H–L") for the same reasons. *Id.* ¶¶ 41–42. Plaintiffs both allege that Lowell "intended for readers to understand" these "false message[s]" and that "many," "if not all," of the readers

"understood the false message as Lowell intended." *Id.* ¶¶ 33, 43. Lowell also allegedly knew these statements were false or acted with reckless disregard for their truth. *Id.* ¶ 36, 46. In response, Lowell argues that both counts should be dismissed for failure to state a claim. *See* Def.'s Br. at 18. I agree. The challenged statements are constitutionally protected opinions, and, independently, plaintiffs have not plausibly alleged that Lowell acted with actual malice. Further, since plaintiffs' proposed amendments fail to allege any actionable statements of defamation, the Court denies the Motion for Leave to File an Amended Complaint.[2]

## I.    Counts I & II: Defamation

"The Supreme Court has long enshrined 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'" *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 584 (D.C. Cir. 2016) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). That is especially true when, as here, plaintiffs "voluntarily thrust[ed]" themselves "into a particular public controversy" and "played a significant role" in that controversy, which makes them limited public figures. *See id.* at 584–85; Compl. ¶¶ 8–9, 22.[3]

To state a claim for defamation, plaintiffs must allege: (1) that Lowell "made a false

---

[2] The Court had stayed additional briefing on the Motion for Leave to File an Amended Complaint pending the outcome of the Motion to Dismiss but ultimately does not require additional briefing because Lowell addressed the motion in his reply brief in support of the Motion to Dismiss. *See* Order (Jan. 22, 2025) [Dkt. #21]; Def.'s Reply at 23–25.

[3] Plaintiffs appear to concede that they are limited public figures, as they allege that they satisfy the "actual malice" standard in the Complaint. *See* Compl. ¶ 29.

and defamatory statement concerning [them]"; (2) that he "published [the challenged statements] without privilege to a third party"; (3) that he made with the requisite "fault"; and (4) that the challenged statements are "actionable as a matter of law" or caused "special harm." *Beeton v. District of Columbia*, 779 A.2d 918, 923 (D.C. 2001) (quoting *Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1173 n.2 (D.C. 1997)).[4] To plead fault, a public figure must allege that the defendant "published the allegedly defamatory statements with actual malice." *Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 115–16 (D.C. Cir. 2017).

### A.    Actionable

For a statement to be "actionable," it must at least express or imply a verifiably false fact about the plaintiffs. *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000). Expressions of pure opinion, unlike statements of false facts, receive constitutional protection because "there is no such thing as a false idea." *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1241 (D.C. 2016) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18 (1990)). In determining whether a statement is a fact or opinion, the Court must "(1) 'examine the allegedly defamatory words in the context of the entire document in which they appear'; (2) determine whether the statements 'could be said to imply undisclosed defamatory facts'; (3) 'consider whether the allegedly defamatory words are susceptible to proof of their truth or falsity'; and (4) 'consider the context in which the document containing the allegedly defamatory reference is published.'" *Sigal Constr.*

---

[4] The Court sits in diversity and therefore applies the law of the forum, which is the District of Columbia. *See* Compl. ¶¶ 4–6; *Steorts v. Am. Airlines, Inc.*, 647 F.2d 194, 196–97 (D.C. Cir. 1981).

*Corp. v. Stanbury*, 586 A.2d 1204, 1210 (D.C. 1991) (quoting *Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 47 (D.C. 1983) (per curiam)). "[S]tatements of opinion can be actionable if they imply a provably false fact, or rely upon stated facts that are provably false." *Guilford*, 760 A.2d at 597 (citing *Milkovich*, 497 U.S. 1). Therefore, "when a writer gives a statement of opinion that is based upon *true* facts that are revealed to readers . . . such opinions generally are not actionable so long as the opinion does not otherwise imply unstated defamatory fact." *Moldea v. New York Times Co.*, 15 F.3d 1137, 1144 (D.C. Cir.), *modified,* 22 F.3d 310 (D.C. Cir. 1994). This is "a question of law for the court to determine as a threshold matter." *Competitive Enter. Inst.*, 150 A.3d at 1244 (quoting *Moldea*, 15 F.3d at 1144).

Starting with context, the documents in which the challenged statements appear, and the circumstances of their alleged publication, cut against these statements being actionable. The statements are not isolated accusations of wrongdoing, as presented in the Complaint, but rather reasoned—albeit aggressive—positions that Biden's attorneys took in the course of representing and advocating for their client. *See* Compl. ¶¶ 20, 23, 25–28. During a criminal investigation of then-sitting President Joe Biden's son, Government agents disclosed details about the investigation to Congress and the media. *See, e.g.*, Apr. 21, 2023 at 1. Biden's defense attorneys wrote letters to Government officials in an attempt to stop more information about their client from becoming public. *See, e.g.*, Jun. 29, 2023 Letter at 5 (writing to the Inspector General that "[w]e would appreciate a response detailing the steps the Office is taking to protect the rights of our client and other individuals associated with this investigation"). The challenged statements are contained

in these letters. In the lead letter, Lowell informs the reader that he is attaching the August 14, 2023 letter where he outlines the factual and legal reasons why he believes plaintiffs violated the law. *See* Aug. 14, 2023 Letter at 3. He also attaches other correspondences, including Clark's letter to DOJ's Inspector General that provides a more detailed legal analysis. *See generally* Jun. 29, 2023 Letter. Viewed in the context of the letters, the challenged statements are a legal opinion advanced by defense attorneys to Government officials during a highly charged criminal investigation of their client.

Turning to the circumstances of the statement's publication, that too happened during Lowell's legal representation of his client.[5] The Government's investigation of Hunter Biden received national attention, and Lowell believed that congressional representatives would publicly disclose the Biden attorneys' correspondences "on a selective, self-serving basis." *See* Sept. 14, 2023 Letter at 2–3. Lowell therefore represented that Biden's legal team were making the correspondences available to the public for "any person" to review. *See id.* at 3. It is apparent from the letter that Lowell wanted to change the narrative concerning the Government's investigation of his client. *See id.* at 1–4 (providing his version of events). Without a doubt, the authorship of the challenged statements and their subsequent publication were the product of legal advocacy.

Beyond context, the challenged statements cannot be "said to imply undisclosed defamatory facts." *Sigal Constr.*, 586 A.2d at 1210. Just the opposite: the challenged statements are based on facts that are disclosed and undisputed. In the letters, Lowell

---

[5] For purposes of the motion to dismiss, the Court accepts as true plaintiffs' allegation that Lowell published the letters to the media. *See Ashcroft*, 556 U.S. at 678; Compl. ¶ 19.

provides the reader with a compilation of details about plaintiffs' congressional testimony and their disclosures to the media. *See* Sept. 14, 2023 Letter at 3 ("[W]e are including an August 14, 2023, letter from Mr. Biden's counsel to the U.S. Attorney in Delaware," which "complies the literally dozens of improper disclosures[.]"); *see also* Jun. 29, 2023 Letter at 3–4; Jun. 30, 2023 Letter at 2–7; Aug. 14, 2023 Letter at 2–8. Plaintiffs do not dispute the truth of these disclosed facts—only the legal significance of them. *See* Compl. ¶¶ 11–12, 22; Pls.' Opp'n at 8 n.2, 20–28. Given the breadth of detail in the letters, the reader would not understand Lowell to be implying any false facts about the plaintiffs. Instead, "the reader understands" such opinions as the speaker's "interpretation of the facts presented, and because the reader is free to draw his or her own conclusion based upon those facts, this type of statement is not actionable in defamation." *Farah v. Esquire Mag.*, 736 F.3d 528, 539 (D.C. Cir. 2013).

Finally, the challenged statements are not sufficiently factual to be "susceptible to proof of their truth or falsity." *See Sigal Constr. Corp.*, 586 A.2d at 1210. While the statements describing plaintiffs' conduct as "clear-cut crimes" and "quite simply felonies" may look like statements of fact at first blush, they express a legal opinion based on the application of Federal Rule of Criminal Procedure 6(e) and section 6103 of title 26 of the United States Code. *See* Compl. ¶¶ 20, 23, 25–28. And the application of these provisions is hardly straightforward. Rule 6(e) forbids the disclosure of grand jury material by certain persons, unless an enumerated exception applies. *See* Fed. R. Crim. P. 6(e)(2)–(3). But our Circuit has held that, "when once-secret grand jury material becomes 'sufficiently widely known,' it may 'los[e] its character as Rule 6(e) material,'" though "not every

public disclosure waives Rule 6(e) protections." *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) (quoting *In re North*, 16 F.3d 1234 (D.C. Cir. 1994)). So too § 6103 provides that tax "[r]eturns and return information shall be confidential" and shall not be disclosed except as authorized. 26 U.S.C. § 6103(a). The U.S. Courts of Appeals are split as to when such information is no longer confidential and subject to the restrictions of the statute, if it is in the public domain.[6] Our Circuit has not, however, weighed in on this so-called "public domain exception" to § 6103. Thus, while the legality of plaintiffs' conduct depends in part on questions of fact, it is ultimately a legal judgment. Due to the complexities in the law, that judgment is not readily verifiable as true or false.

The Supreme Court's decision in *Milkovich v. Lorain Journal Company* is instructive. In that case, a high school wrestling coach argued that a local newspaper libeled him by printing a column that implied he had perjured himself in a judicial proceeding concerning his role in a brawl at a wrestling match. *Milkovich*, 497 U.S. at 3–4. The column was entitled "Maple [Heights High School] beat the law with the 'big lie,'" and stated, in part: "Anyone who attended the meet . . . knows in his heart that [the coach] . . . lied at the hearing after [he had] given his solemn oath to tell the truth." *Id.* at 4–5.

---

[6] The Ninth and Sixth Circuits hold that once taxpayer information becomes part of the public domain, it may no longer be subject to the protections of § 6103. *See William E. Schrambling Acct. Corp. v. United States*, 937 F.2d 1485, 1488 (9th Cir. 1991); *Rowley v. United States*, 76 F.3d 796, 801 (6th Cir. 1996). The Fifth, Seventh, Eighth, and Tenth Circuits hold that the disclosure of return information is unlawful under § 6103 "only when the immediate source of the information is a return, or some internal document based on a return . . . and not when the immediate source is a public document lawfully prepared by an agency that is separate from the Internal Revenue Service and has lawful access to tax returns." *See Thomas v. United States*, 890 F.2d 18, 21 (7th Cir. 1989); *see also Johnson v. Sawyer*, 120 F.3d 1307, 1323 (5th Cir. 1997) (applying the standard used in *Thomas*); *Noske v. United States*, 1993 WL 264531, at *2 (8th Cir. July 15, 1993) (same); *Rice v. United States*, 166 F.3d 1088, 1091 (10th Cir. 1999) (same).

The Supreme Court held that a reasonable factfinder could conclude that the column implied an assertion that the coach perjured himself in a judicial proceeding, and that "the connotation that [the coach] committed perjury is sufficiently factual to be susceptible of being proved true or false" because "whether [the coach] lied . . . can be made on a core of objective evidence by comparing, *inter alia*, petitioner's testimony before the . . . board with his subsequent testimony before the trial court." *Id.* at 21. Here, by contrast, the factfinder cannot determine whether the challenged statements are true or false by verifying whether the plaintiffs' conduct violated established law; rather, the factfinder would have to decide, among other potential legal issues, the extent to which the public domain exceptions to Rule 6(e) and § 6103 are applicable to plaintiffs' conduct and the information that they disclosed. That inquiry is not purely factual; it is a matter of legal judgment!

Not surprisingly, plaintiffs disagree. They argue that Lowell did not "hedge his opinion or otherwise make clear that it was debatable" whether they committed felonies and that, by speaking with "finality," the challenged statements are verifiable facts. *Id.* at 12–13. According to plaintiffs, because there is a circuit split as to the application of § 6103, it is false that their activities were a "clear-cut crime" or a crime without "cognizable legal protection." *See id.* at 13. But the finality of a statement is not determinative of whether a statement is a fact as opposed to an expression of a firmly held opinion. Just as the qualifier "I think" does not transform a statement of fact into one of opinion, *see Milkovich*, 497 U.S. at 18–19, the lack of a qualifier does not necessarily turn an opinion into a fact. Here, Lowell made an assertive statement concerning nuanced law, and he was not required to provide a "balanced" view of his opinion. *See Ollman v. Evans*,

750 F.2d 970, 986 (D.C. Cir. 1984). Our system of justice is adversarial, and the reader expects that criminal defense attorneys are not neutral arbiters! While that does not give an attorney a free pass to say whatever he pleases, Lowell provides the reader with the legal and factual bases for his statements, and the reader would understand, and expect, that Biden's attorneys were advancing a legal position that was advantageous for their client. *See* Aug. 14, 2023 Letter at 10 ("[A]lthough we see no basis in law or fact for any position to the contrary, should the Government disagree with the above, we seek that the Government advise as much in writing, along with the basis for its decision.").

Undaunted, plaintiffs also argue that, even if the challenged statements are opinions, they are actionable. They first argue that the statements imply the defamatory message that plaintiffs disclosed "confidential information that was not already in the public domain." *See* Pls.' Opp'n at 7–10; Compl. ¶¶ 32, 42. I disagree. The reader could not be left with that impression when reading the challenged statements. Lowell and Clark represent that every disclosure to Congress and the media violated federal law, irrespective of whether Congress had previously released the information to the public. *See* Compl. ¶¶ 20, 23–28.[7] For example, Lowell writes that Congress "g[a]ve a forum for the so-called agents or their representative to violate federal laws protecting grand jury and tax

---

[7] Allegation D states: "[I]t is now apparent that IRS Supervisory Special Agent Gary Shapley is the source of at last many of the most damaging and troubling leaks." That statement is followed with a description of various news stories that were sourced ultimately to Shapley. *See* Jun. 29, 2023 Letter at 3. In opposition, Shapley states that "[h]e does not allege that 'Allegation D' is defamatory based on Lowell identifying him as the 'source.' However, Shapley disputes Clark's characterization that he was the 'source.'" Pls.' Opp'n at 8 n.2. Since Shapley does not allege that this statement is defamatory based on Lowell identifying him as the "source," the only defamatory message that a reasonable reader could take from the statement in the context of the letter is that Shapley's disclosures were illegal.

information," Sept. 14, 2023 Letter at 2, and that "[t]he transcripts [of Shapley's and Ziegler's congressional testimony] are replete with illegal leaks of grand jury information, going far beyond disclosing *government misconduct*, the whole point of *legitimate* whistleblowers," Aug. 14, 2023 Letter at 3. The letters say nothing about whether plaintiffs' disclosures to the media discussed information that was not already in the public domain, and a reasonable factfinder could not conclude that the challenged statements imply as much.

Plaintiffs also argue that Lowell relies on undisclosed facts that deprived readers of an opportunity to draw their own conclusions about the legality of their conduct. Pls.' Opp'n at 13–20. In plaintiffs' view, Lowell should have disclosed the circuit split as to when taxpayer information loses its confidentiality, that cases in this district have recognized a public domain exception to grand jury secrecy rules, and that our Circuit Court recognizes a public domain exception in the grand jury context in certain circumstances. *Id.* at 14–15. These "undisclosed facts," however, have nothing to do with Shapley or Ziegler and are certainly not defamatory. *See Milkovich*, 497 U.S. at 19–20 (speaker is liable where a statement of opinion "implies false and defamatory facts *regarding public figures or officials*" (emphasis added)); *Moldea*, 15 F.3d at 114 ("opinions generally are not actionable so long as [they] do[ ] not otherwise imply unstated defamatory fact"). Moreover, the reader is also aware of a difference in opinion: one of the letters discloses that congressional representatives believed plaintiffs' disclosures were lawful. *See, e.g.*, Jun. 30, 2023 Letter at 2 (quoting the congressional transcript: "Chairman Smith takes our tax privacy laws extremely seriously, and we have worked diligently to

make sure that you can provide your disclosure to Congress in a legal manner . . . ."). In fact, as I have just explained, the underlying facts are not in dispute. The only dispute is over the legal significance of those facts.

In sum, Shapley and Ziegler have not alleged that Lowell published statements that expressly or implicitly rely upon facts that are provably false. *See Milkovich*, 497 U.S. at 20. Plaintiffs have therefore failed to state claims for defamation.

B.    Actual Malice

Even if the challenged statements were actionable, plaintiffs' claims suffer from another fatal flaw: the Complaint does not plausibly allege that Lowell acted with "actual malice" in allegedly publishing the letters.

"The actual malice standard is famously 'daunting.'" *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021) (quoting *McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1308 (D.C. Cir. 1996)). "A plaintiff must prove by 'clear and convincing evidence' that the speaker made the statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (citation omitted). In other words, "the defendant must have made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication." *Id.* (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989)) (internal quotation marks omitted). To establish actual malice, "[t]he speaker's failure to meet an objective standard of reasonableness is insufficient; rather the speaker must have actually 'harbored subjective doubt.'" *Id.* (quoting *Jankovic*, 822 F.3d at 589). Thus, "even an 'extreme departure from professional standards' is insufficient to prove actual

21

malice on its own." *Id.* at 242 (quoting *Harte-Hanks*, 491 U.S. at 665).

"[T]he D.C. Circuit has further fleshed out this inquiry, holding that to establish actual malice a plaintiff 'must show, by clear and convincing evidence, that when the defendants published the alleged defamation[ ] they were subjectively aware that it was highly probable that the story was '(1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that [the defendant] had obvious reasons to doubt.'" *Montgomery v. Risen*, 197 F. Supp. 3d 219, 259 (D.D.C. 2016), *aff'd*, 875 F.3d 709 (D.C. Cir. 2017) (quoting *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003)).

Plaintiffs here rely solely on conclusory allegations to plead actual malice. Indeed, one set of allegations boil down to no more than the naked assertion that Lowell knew that the statements in the letters were "both expressly and implicitly false." *See* Compl. ¶ 29. This type of pleading, which offers no more than "labels and conclusions" and a reference to the relevant legal standard, does not satisfy Rule 8. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also id.* (noting that a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" (citation omitted)).

The other allegation charges that Lowell published the letters due to animus against Shapley and Ziegler. *See* Compl. ¶ 19 ("That very same day Lowell, acting with clear malice—in retaliation for their protected whistleblowing and for the purpose of causing harm to Shapley's and Ziegler's professional and personal reputations—republished all of his legal team's prior defamatory communications to the media."); Pls.' Opp'n at 39–40. Here too this allegation is insufficient because, in addition to also being conclusory, the

"caselaw resoundingly rejects the proposition that a motive to disparage someone is evidence of actual malice." *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012); *see also Harte-Hanks*, 491 U.S. at 665 ("motive in publishing a story . . . cannot provide a sufficient basis for finding actual malice").

Plaintiffs also point to other, additional allegations in their brief that do not support an inference of actual malice. First, they allege that Lowell was "intimately familiar" with Shapley's and Ziegler's congressional testimony, particularly evidenced by his August 14, 2023 letter, and thus he "would have known" that they only discussed information that Congress later released to the public. Pls.' Opp'n at 29–30. I struggle to see the relevance of this allegation because the letter states that the congressional transcripts themselves contain illegal disclosures. *See* Aug. 14, 2023 Letter at 3. Next, plaintiffs allege that Lowell "knows it is not illegal to disclose grand jury information already in the public domain." Pls.' Opp'n at 33. This allegation is conclusory just as those in the Complaint. Finally, plaintiffs' other allegations boil down to the claim that Lowell acted with malice because he was not a neutral third-party. *See id.* at 33–40. Plaintiffs point to their "antagonistic and oppositional" relationship and the "acerbic tone and tenor" of Lowell's letter. *Id.* at 36, 40. But the existence of an adversarial relationship *alone* is not indicative of actual malice. *See Tavoulareas v. Piro*, 817 F.2d 762, 795–96 (D.C. Cir. 1987) (adversarial stances in newspapers, without more, are "not indicative of actual malice" where "the reporter conducted a detailed investigation and wrote a story that is substantially true"). Therefore, these various allegations, to the extent they could be inferred from the Complaint, do not support plaintiffs' claims that Lowell acted with actual malice.

\*       \*       \*

Because the challenged statements are not actionable, and (alternatively) plaintiffs have not plausibly alleged that Lowell acted with actual malice, the Court dismisses Counts I and II.[8]

## II.    Plaintiffs' Motion for Leave to File an Amended Complaint

The Court next turns to plaintiffs' Motion for Leave to File an Amended Complaint. Shapley and Ziegler correctly state that "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as . . . futility of amendment." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted).  Here, Lowell argues that the Court should not grant leave to amend because plaintiffs' proposed amendments do not cure the deficiencies in the original Complaint.  Def.'s Reply at 23–25.  "[A]rguing the futility of an amendment is akin to contending that the new complaint would not survive a motion to dismiss." *Bess v. District of Columbia*, No. 19-3152, 2020 WL 4530581, at \*3 (D.D.C. Aug. 6, 2020).  I agree.

Plaintiffs' proposed amendments would be futile because plaintiffs still fail to allege an actionable statement as a matter of law.  The Amended Complaint does nothing to address this deficiency.  *See* Amend. Compl. ¶¶ 13, 15, 19–21, 32–39 [Dkt. #18-1]. Instead, it adds allegations to support the inference that Lowell published the challenged statements and that he had "knowledge of falsity."  *See id.*  These amendments, however,

---

[8] The Court does not address Lowell's other grounds for dismissal, since plaintiffs have not plausibly alleged statements that are actionable as a matter of law or that Lowell made the statements with the requisite fault.

do not cure the fundamental flaw of plaintiffs' suit: that Lowell allegedly published statements that are constitutionally protected legal opinions. Absent a statement that expresses or implies a false statement of fact, plaintiffs fail to state a claim. Thus, the Amended Complaint would not survive a Rule 12(b)(6) motion. *See Farah*, 736 F.3d at 540 (dismissal of defamation count for failure to state a claim is proper where the statements are not actionable).

## CONCLUSION

For the foregoing reasons, Lowell's Motion to Dismiss is **GRANTED**, and plaintiffs' Motion for Leave to File an Amended Complaint is **DENIED**. An Order consistent with the above accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge